STEFFEL $v.$ THOMPSON ET AL.

No. 72–5581. Argued November 13, 1973—Decided March 19, 1974

BRENNAN, J., delivered the opinion for a unanimous Court. STEWART, J., filed a concurring opinion, in which BURGER, C. J., joined, *post*, p. 475. WHITE, J., filed a concurring opinion, *post*, p. 476. REHNQUIST, J., filed a concurring opinion, in which BURGER, C. J., joined, *post*, p. 478.

*Howard Moore, Jr.,* argued the cause for petitioner. With him on the brief were *Elizabeth R. Rindskopf* and *William R. Gignilliat III.*

*Lawrence M. Cohen* argued the cause for respondents. With him on the brief for respondents Hudgens et al. was *Dock H. Davis.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

When a state criminal proceeding under a disputed state criminal statute is pending against a federal plaintiff at the time his federal complaint is filed, *Younger* v. *Harris,* 401 U. S. 37 (1971), and *Samuels* v. *Mackell,* 401 U. S. 66 (1971), held, respectively, that, unless bad-faith enforcement or other special circumstances are demonstrated, principles of equity, comity, and federalism preclude issuance of a federal injunction restraining enforcement of the criminal statute and, in all but unusual circumstances, a declaratory judgment upon the constitutionality of the statute. This case presents the important question reserved in *Samuels* v. *Mackell, id.,* at 73–74, whether declaratory relief is precluded when a state prosecution has been threatened, but is not pending, and a showing of bad-faith enforcement or other special circumstances has not been made.

Petitioner, and others, filed a complaint in the District Court for the Northern District of Georgia, invoking the Civil Rights Act of 1871, 42 U. S. C. § 1983, and its jurisdictional implementation, 28 U. S. C. § 1343. The complaint requested a declaratory judgment pursuant to 28 U. S. C. §§ 2201–2202, that Ga. Code Ann. § 26–1503 (1972) [1] was being applied in violation of petitioner's

---

[1] This statute provides:

"(a) A person commits criminal trespass when he intentionally damages any property of another without his consent and the damage thereto is $100 or less, or knowingly and maliciously interferes with the possession or use of the property of another person without his consent.

"(b) A person commits criminal trespass when he knowingly and without authority:

"(1) Enters upon the land or premises of another person, or into any part of any vehicle, railroad car, aircraft, or watercraft of another person, for an unlawful purpose; or

First and Fourteenth Amendment rights, and an injunction restraining respondents—the solicitor of the Civil and Criminal Court of DeKalb County, the chief of the DeKalb County Police, the owner of the North DeKalb Shopping Center, and the manager of that shopping center—from enforcing the statute so as to interfere with petitioner's constitutionally protected activities.

The parties stipulated to the relevant facts: On October 8, 1970, while petitioner and other individuals were distributing handbills protesting American involvement in Vietnam on an exterior sidewalk of the North DeKalb Shopping Center, shopping center employees asked them to stop handbilling and leave.[2] They declined to do so, and police officers were summoned. The officers told them that they would be arrested if they did not stop handbilling. The group then left to avoid arrest. Two days later petitioner and a companion returned to the shopping center and again began handbilling. The manager of the center called the police, and petitioner and his companion were once again told that failure to stop their handbilling would result in their arrests. Petitioner left to avoid arrest. His companion stayed, however, con-

---

"(2) Enters upon the land or premises of another person, or into any part of any vehicle, railroad car, aircraft, or watercraft of another person, after receiving, prior to such entry, notice from the owner or rightful occupant that such entry is forbidden; or

"(3) Remains upon the land or premises of another person, or within the vehicle, railroad car, aircraft, or watercraft of another person, after receiving notice from the owner or rightful occupant to depart.

"(c) A person convicted of criminal trespass shall be punished as for a misdemeanor."

[2] At a hearing in the District Court, petitioner testified that on another occasion, prior to June 1970, he had also been threatened with arrest for handbilling at the shopping center. At that time, the police had shown him the statute they intended to enforce, presumably § 26–1503. R. 140–141.

tinued handbilling, and was arrested and subsequently arraigned on a charge of criminal trespass in violation of § 26–1503.[3] Petitioner alleged in his complaint that, although he desired to return to the shopping center to distribute handbills, he had not done so because of his concern that he, too, would be arrested for violation of § 26–1503; the parties stipulated that, if petitioner returned and refused upon request to stop handbilling, a warrant would be sworn out and he might be arrested and charged with a violation of the Georgia statute.[4]

After hearing, the District Court denied all relief and dismissed the action, finding that "no meaningful contention can be made that the state has [acted] or will in the future act in bad faith," and therefore "the rudiments of an active controversy between the parties . . . [are] lacking." 334 F. Supp. 1386, 1389–1390 (1971). Petitioner appealed[5] only from the denial of declaratory relief.[6] The Court of Appeals for the Fifth Circuit, one judge concurring in the result, affirmed the District Court's

---

[3] We were advised at oral argument that the trial of petitioner's companion, Sandra Lee Becker, has been stayed pending decision of this case. See Tr. of Oral Arg. 31.

[4] At the District Court hearing, counsel for the police officers indicated that arrests in fact would be made if warrants sworn out by shopping center personnel were facially proper. R. 134.

[5] The complaint was initially styled as a class action. Named as plaintiffs were petitioner, a minor suing through his father; Sandra Lee Becker, petitioner's handbilling companion against whom a prosecution was pending under the Georgia statute, see n. 3, *supra*, also a minor suing through her father; and the Atlanta Mobilization Committee. The complaint had also sought to enjoin plaintiff Becker's pending prosecution. Only petitioner appealed from the District Court's decision denying all relief.

[6] Petitioner's notice of appeal challenged the denial of both injunctive and declaratory relief. However, in his appellate brief, he abandoned his appeal from denial of injunctive relief. *Becker* v. *Thompson*, 459 F. 2d 919, 921 (CA5 1972).

judgment refusing declaratory relief.[7]   *Becker* v. *Thompson,* 459 F. 2d 919 (1972).   The court recognized that the holdings of *Younger* v. *Harris,* 401 U. S. 37 (1971), and *Samuels* v. *Mackell,* 401 U. S. 66 (1971), were expressly limited to situations where state prosecutions were pending when the federal action commenced, but was of the view that *Younger* v. *Harris* "made it clear beyond peradventure that irreparable injury must be measured by bad faith harassment and such test must be applied to a request for injunctive relief against *threatened* state court criminal prosecution" as well as against a pending prosecution; and, furthermore, since the opinion in *Samuels* v. *Mackell* reasoned that declaratory relief would normally disrupt the state criminal justice system in the manner of injunctive relief, it followed that "the same test of bad

---

[7] Since the complaint had originally sought to enjoin enforcement of the state statute on grounds of unconstitutionality, a three-judge district court should have been convened.   See 28 U. S. C. § 2281; *Goosby* v. *Osser,* 409 U. S. 512 (1973); *Idlewild Bon Voyage Liquor Corp.* v. *Epstein,* 370 U. S. 713, 715 (1962).   A three-judge court is required even if the constitutional attack—as here—is upon the statute as applied, see *Department of Employment* v. *United States,* 385 U. S. 355 (1966); *Query* v. *United States,* 316 U. S. 486 (1942); *Ex parte Bransford,* 310 U. S. 354, 361 (1940); see generally Currie, The Three-Judge District Court in Constitutional Litigation, 32 U. Chi. L. Rev. 1, 37–50 (1964); and is normally required even if the decision is to dismiss under *Younger-Samuels* principles, since an exercise of discretion will usually be necessary, see *Jones* v. *Wade,* 479 F. 2d 1176, 1180 (CA5 1973); *Abele* v. *Markle,* 452 F. 2d 1121, 1125 (CA2 1971); see generally Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv. L. Rev. 299, 309 (1963). But since petitioner's request for injunctive relief was abandoned on appeal, see n. 6, *supra,* and only a request for declaratory relief remained, the Court of Appeals did not err in exercising jurisdiction over the appeal.   Cf. *Roe* v. *Wade,* 410 U. S. 113, 123 (1973); *Mitchell* v. *Donovan,* 398 U. S. 427 (1970); *Kennedy* v. *Mendoza-Martinez,* 372 U. S. 144, 152–155 (1963); *Stratton* v. *St. Louis S. W. R. Co.,* 282 U. S. 10, 16 (1930).

faith harassment is prerequisite . . . for declaratory relief in a threatened prosecution." 459 F. 2d, at 922. A petition for rehearing en banc was denied, three judges dissenting. 463 F. 2d 1338 (1972).[8]

We granted certiorari, 410 U. S. 953 (1973), and now reverse.

I

At the threshold we must consider whether petitioner presents an "actual controversy," a requirement imposed by Art. III of the Constitution and the express terms of the Federal Declaratory Judgment Act, 28 U. S. C. § 2201.[9]

---

[8] Other federal courts have entertained applications for injunctive and declaratory relief in the absence of a pending state prosecution. See, e. g., *Thoms* v. *Heffernan,* 473 F. 2d 478 (CA2 1973), aff'g 334 F. Supp. 1203 (Conn. 1971) (three-judge court); *Wulp* v. *Corcoran,* 454 F. 2d 826 (CA1 1972); *Crossen* v. *Breckenridge,* 446 F. 2d 833 (CA6 1971); *Lewis* v. *Kugler,* 446 F. 2d 1343 (CA3 1971); *Anderson* v. *Vaughn,* 327 F. Supp. 101 (Conn. 1971) (three-judge court). Even the Court of Appeals for the Fifth Circuit has limited the scope of the instant decision by entertaining an action for declaratory and injunctive relief in the absence of a state prosecution when the federal suit attacked the facial validity of a state statute rather than the validity of the statute as applied. See *Jones* v. *Wade,* *supra* (Wisdom, J.).

[9] Section 2201 provides:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Section 2202 further provides:

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

Unlike three of the appellees in *Younger* v. *Harris,* 401 U. S., at 41, petitioner has alleged threats of prosecution that cannot be characterized as "imaginary or speculative," *id.,* at 42. He has been twice warned to stop handbilling that he claims is constitutionally protected and has been told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted. The prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been "chimerical," *Poe* v. *Ullman,* 367 U. S. 497, 508 (1961). In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights. See, *e. g., Epperson* v. *Arkansas,* 393 U. S. 97 (1968). Moreover, petitioner's challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him. Cf. *Boyle* v. *Landry,* 401 U. S. 77, 81 (1971); *Watson* v. *Buck,* 313 U. S. 387, 399–400 (1941).

Nonetheless, there remains a question as to the *continuing* existence of a live and acute controversy that must be resolved on the remand we order today.[10]  In *Golden* v. *Zwickler,* 394 U. S. 103 (1969), the appellee sought a declaratory judgment that a state criminal statute prohibiting the distribution of anonymous election-campaign literature was unconstitutional. The appellee's complaint had expressed a desire to distribute handbills during the forthcoming re-election campaign of a Congressman, but it was later learned that the Con-

---

[10] The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. See, *e. g., Roe* v. *Wade,* 410 U. S., at 125; *SEC* v. *Medical Comm. for Human Rights,* 404 U. S. 403 (1972); *United States* v. *Munsingwear, Inc.,* 340 U. S. 36 (1950).

gressman had retired from the House of Representatives to become a New York Supreme Court Justice. In that circumstance, we found no extant controversy, since the record revealed that appellee's sole target of distribution had been the Congressman and there was no immediate prospect of the Congressman's again becoming a candidate for public office. Here, petitioner's complaint indicates that his handbilling activities were directed "against the War in Vietnam and the United States' foreign policy in Southeast Asia." Since we cannot ignore the recent developments reducing the Nation's involvement in that part of the world, it will be for the District Court on remand to determine if subsequent events have so altered petitioner's desire to engage in handbilling at the shopping center that it can no longer be said that this case presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.,* 312 U. S. 270, 273 (1941); see *Zwickler* v. *Koota,* 389 U. S. 241, 244 n. 3 (1967).

## II

We now turn to the question of whether the District Court and the Court of Appeals correctly found petitioner's request for declaratory relief inappropriate.

Sensitive to principles of equity, comity, and federalism, we recognized in *Younger* v. *Harris, supra,* that federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions. We were cognizant that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility,

equally with the federal courts "to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . ." *Robb* v. *Connolly,* 111 U. S. 624, 637 (1884). In *Samuels* v. *Mackell, supra,* the Court also found that the same principles ordinarily would be flouted by issuance of a federal declaratory judgment when a state proceeding was pending, since the intrusive effect of declaratory relief "will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." 401 U. S., at 72.[11] We therefore held in *Samuels* that, "in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment . . . ." *Id.,* at 73.

Neither *Younger* nor *Samuels,* however, decided the question whether federal intervention might be permissible in the absence of a pending state prosecution. In *Younger,* the Court said:

"We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." 401 U. S., at 41.

See also *id.,* at 55 (STEWART and Harlan, JJ., concurring); *id.,* at 57 (BRENNAN, WHITE, and MARSHALL, JJ., concurring). Similarly, in *Samuels* v. *Mackell,* the Court stated:

"We, of course, express no views on the propriety

---

[11] The Court noted that under 28 U. S. C. § 2202 a declaratory judgment might serve as the basis for issuance of a later injunction to give effect to the declaratory judgment, see n. 9, *supra,* and that a declaratory judgment might have a res judicata effect on the pending state proceeding. 401 U. S., at 72.

of declaratory relief when no state proceeding is pending at the time the federal suit is begun." 401 U. S., at 73–74.

See also *id.*, at 55 (STEWART and Harlan, JJ., concurring); *id.*, at 75–76 (BRENNAN, WHITE, and MARSHALL, JJ., concurring).

These reservations anticipated the Court's recognition that the relevant principles of equity, comity, and federalism "have little force in the absence of a pending state proceeding." *Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498, 509 (1972). When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding. Cf. *Dombrowski* v. *Pfister,* 380 U. S. 479, 490 (1965).

When no state proceeding is pending and thus considerations of equity, comity, and federalism have little vitality, the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief. Here, the Court of Appeals held that, because injunctive relief would not be appropriate since petitioner failed to demonstrate irreparable injury—a traditional prerequisite to

injunctive relief, *e. g., Dombrowski* v. *Pfister, supra*—
it followed that declaratory relief was also inappro-
priate. Even if the Court of Appeals correctly viewed
injunctive relief as inappropriate—a question we need
not reach today since petitioner has abandoned his
request for that remedy, see n. 6 *supra*—[12] the court
erred in treating the requests for injunctive and declara-
tory relief as a single issue. "[W]hen no state prose-
cution is pending and the only question is whether
declaratory relief is appropriate[,] . . . the congressional
scheme that makes the federal courts the primary
guardians of constitutional rights, and the express con-
gressional authorization of declaratory relief, afforded
because it is a less harsh and abrasive remedy than the
injunction, become the factors of primary significance."
*Perez* v. *Ledesma,* 401 U. S. 82, 104 (1971) (separate
opinion of BRENNAN, J.).

The subject matter jurisdiction of the lower federal
courts was greatly expanded in the wake of the Civil War.
A pervasive sense of nationalism led to enactment of the
Civil Rights Act of 1871, 17 Stat. 13, empowering the

---

[12] We note that, in those cases where injunctive relief has been
sought to restrain an imminent, but not yet pending, prosecution
*for past conduct,* sufficient injury has not been found to warrant
injunctive relief, see *Beal* v. *Missouri Pacific R. Co.,* 312 U. S. 45
(1941); *Spielman Motor Sales Co.* v. *Dodge,* 295 U. S. 89
(1935); *Fenner* v. *Boykin,* 271 U. S. 240 (1926). There is some
question, however, whether a showing of irreparable injury might
be made in a case where, although no prosecution is pending or
impending, an individual demonstrates that he will be required to
*forgo* constitutionally protected activity in order to avoid arrest.
Compare *Dombrowski* v. *Pfister,* 380 U. S. 479 (1965); *Hygrade
Provision Co.* v. *Sherman,* 266 U. S. 497 (1925); and *Terrace*
v. *Thompson,* 263 U. S. 197, 214, 216 (1923), with *Douglas* v. *City
of Jeannette,* 319 U. S. 157 (1943); see generally Note, Implications
of the *Younger* Cases for the Availability of Federal Equitable Relief
When No State Prosecution is Pending, 72 Col. L. Rev. 874 (1972).

lower federal courts to determine the constitutionality of actions, taken by persons under color of state law, allegedly depriving other individuals of rights guaranteed by the Constitution and federal law, see 42 U. S. C. § 1983, 28 U. S. C. § 1343 (3).[13] Four years later, in the Judiciary Act of March 3, 1875, 18 Stat. 470, Congress conferred upon the lower federal courts, for but the second time in their nearly century-old history, general federal-question jurisdiction subject only to a jurisdictional-amount requirement, see 28 U. S. C. § 1331.[14] With this latter enactment, the lower federal courts "ceased to be restricted tribunals of fair dealing between citizens of different states and became the *primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States." F. Frankfurter & J. Landis, The Business of the Supreme Court 65 (1928) (emphasis added).[15] These two statutes, together with the Court's decision in *Ex parte Young*, 209 U. S. 123 (1908)—holding that state officials who threaten to enforce an unconstitutional state statute may be enjoined by a federal court of equity and that a federal court may, in appropriate circumstances, enjoin

---

[13] "Sensitiveness to 'states' rights', fear of rivalry with state courts and respect for state sentiment, were swept aside by the great impulse of national feeling born of the Civil War. Nationalism was triumphant; in national administration was sought its vindication. The new exertions of federal power were no longer trusted to the enforcement of state agencies." F. Frankfurter & J. Landis, The Business of the Supreme Court 64 (1928).

[14] In the last days of the John Adams administration, general federal-question jurisdiction had been granted to the federal courts by § 11 of the Midnight Judges Act, 2 Stat. 92 (1801). The Act was repealed only one year later by § 1 of the Act of Mar. 8, 1802, 2 Stat. 132.

[15] The histories of the Civil Rights Act of 1871 and the Judiciary Act of 1875 are detailed in *Zwickler* v. *Koota*, 389 U. S. 241, 245–247 (1967).

future state criminal prosecutions under the unconstitutional Act—have "established the modern framework for federal protection of constitutional rights from state interference." *Perez* v. *Ledesma, supra,* at 107 (separate opinion of BRENNAN, J.).

A "storm of controversy" raged in the wake of *Ex parte Young,* focusing principally on the power of a single federal judge to grant *ex parte* interlocutory injunctions against the enforcement of state statutes, H. Hart & H. Wechsler, The Federal Courts and the Federal System 967 (2d ed. 1973); see generally *Goldstein* v. *Cox,* 396 U. S. 471 (1970); Hutcheson, A Case for Three Judges, 47 Harv. L. Rev. 795, 804–805 (1934). This uproar was only partially quelled by Congress' passage of legislation, 36 Stat. 557, requiring the convening of a three-judge district court [16] before a preliminary injunction against enforcement of a state statute could issue, and providing for direct appeal to this Court from a decision granting or denying such relief.[17] See 28

---

[16] The three-judge-court procedure, with expedited review, was modeled after the Expediting Act, 32 Stat. 823, now 15 U. S. C. §§ 28–29; 49 U. S. C. §§ 44–45, requiring that for certain antitrust cases certified by the Attorney General to be of particular public importance a three-judge court be convened with direct appeal to the Supreme Court, as well as a 1906 Act, 34 Stat. 584, 592, applying the same procedure to suits brought to restrain, annul, or set aside orders of the Interstate Commerce Commission. See Hutcheson, A Case for Three Judges, 47 Harv. L. Rev. 795, 810 (1934).

[17] The three-judge-court provision was amended in 1913 to apply also to interlocutory injunctions restraining enforcement of state administrative or commission orders. C. 160, 37 Stat. 1013. It was further amended in 1925 to extend the three-judge requirement and the direct-appeal provisions to the final hearing on a permanent injunction, thereby ending the anomalous situation in which a single judge, at the final hearing, could overrule the decision of three judges granting an interlocutory injunction. 43 Stat. 936, 938. When the statute was codified in 1948, it was made applicable to all actions

U. S. C. §§ 2281, 1253. From a State's viewpoint the granting of injunctive relief—even by these courts of special dignity—"rather clumsily" crippled state enforcement of its statutes pending further review, see H. R. Rep. No. 288, 70th Cong., 1st Sess., 2 (1928); H. R. Rep. No. 94, 71st Cong., 2d Sess., 2 (1929); H. R. Rep. No. 627, 72d Cong., 1st Sess., 2 (1932). Furthermore, plaintiffs were dissatisfied with this method of testing the constitutionality of state statutes, since it placed upon them the burden of demonstrating the traditional prerequisites to equitable relief—most importantly, irreparable injury. See, *e. g., Fenner* v. *Boykin,* 271 U. S. 240, 243 (1926).

To dispel these difficulties, Congress in 1934 enacted the Declaratory Judgment Act, 28 U. S. C. §§ 2201–2202. That Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction and to be utilized to test the constitutionality of state criminal statutes in cases where injunctive relief would be unavailable is amply evidenced by the legislative history of the Act, traced in full detail in *Perez* v. *Ledesma, supra,* at 111–115 (separate opinion of BRENNAN, J.). The highlights of that history, particularly pertinent to our inquiry today, emphasize that:

"[I]n 1934, without expanding or reducing the subject matter jurisdiction of the federal courts, or in any way diminishing the continuing vitality of *Ex parte Young* with respect to federal injunctions, Congress empowered the federal courts to grant a new remedy, the declaratory judgment. . . .

seeking either a preliminary or permanent injunction, *Goldstein* v. *Cox,* 396 U. S. 471, 478 n. 3 (1970). See generally H. Hart & H. Wechsler, The Federal Courts and the Federal System 967–968 (2d ed. 1973); C. Wright, Federal Courts § 50, pp. 188–189 (2d ed. 1970).

"The express purpose of the Federal Declaratory Judgment Act was to provide a milder alternative to the injunction remedy. . . . Of particular significance on the question before us, the Senate report [S. Rep. No. 1005, 73d Cong., 2d Sess. (1934)] makes it even clearer that the declaratory judgment was designed to be available to test state criminal statutes in circumstances where an injunction would not be appropriate. . . .

.        .        .              .              .

"Much of the hostility to federal injunctions referred to in the Senate report was hostility to their use against state officials seeking to enforce state regulatory statutes carrying criminal sanctions; this was the strong feeling that produced the Three-Judge Court Act in 1910, the Johnson Act of 1934, 28 U. S. C. § 1342, and the Tax Injunction Act of 1937, 28 U. S. C. § 1341. The Federal Declaratory Judgment Act was intended to provide an alternative to injunctions against state officials, except where there was a federal policy against federal adjudication of the class of litigation altogether. . . . Moreover, the Senate report's clear implication that declaratory relief would have been appropriate in *Pierce* v. *Society of Sisters,* 268 U. S. 510 (1925), and *Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365 (1926), both cases involving federal adjudication of the constitutionality of a state statute carrying criminal penalties, and the report's quotation from *Terrace* v. *Thompson,* which also involved anticipatory federal adjudication of the constitutionality of a state criminal statute, make it plain that Congress anticipated that the declaratory judgment procedure would be used by the federal courts to test the con-

stitutionality of state criminal statutes." 401 U. S., at 111–112, 115.[18]

It was this history that formed the backdrop to our decision in *Zwickler* v. *Koota,* 389 U. S. 241 (1967), where a state criminal statute was attacked on grounds of unconstitutional overbreadth and no state prosecution was pending against the federal plaintiff. There, we found error in a three-judge district court's considering, as a single question, the propriety of granting injunctive and declaratory relief. Although we noted that injunctive relief might well be unavailable under principles of equity jurisprudence canvassed in *Douglas* v. *City of Jeannette,* 319 U. S. 157 (1943), we held that "a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." 389 U. S., at 254. Only one year ago, we

---

[18] As Professor Borchard, a principal proponent and author of the Federal Declaratory Judgment Act, said in a written statement introduced at the hearings on the Act:

"It often happens that courts are unwilling to grant injunctions to restrain the enforcement of penal statutes or ordinances, and relegate the plaintiff to his option, either to violate the statute and take his chances in testing constitutionality on a criminal prosecution, or else to [forgo], in the fear of prosecution, the exercise of his claimed rights. Into this dilemma no civilized legal system operating under a constitution should force any person. The court, in effect, by refusing an injunction informs the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool, is to eat it. Assuming that the plaintiff has a vital interest in the enforcement of the challenged statute or ordinance, there is no reason why a declaratory judgment should not be issued, instead of compelling a violation of the statute as a condition precedent to challenging its constitutionality." Hearings on H. R. 5623 before a Subcommittee of the Senate Committee on the Judiciary, 70th Cong., 1st Sess., 75–76 (1928). See E. Borchard, Declaratory Judgments x–xi (2d ed. 1941).

reaffirmed the *Zwickler* v. *Koota* holding in *Roe* v. *Wade,* 410 U. S. 113 (1973), and *Doe* v. *Bolton,* 410 U. S. 179 (1973). In those two cases, we declined to decide whether the District Courts had properly denied to the federal plaintiffs, against whom no prosecutions were pending, injunctive relief restraining enforcement of the Texas and Georgia criminal abortion statutes; instead, we affirmed the issuance of declaratory judgments of unconstitutionality, anticipating that these would be given effect by state authorities. We said:

> "The Court has recognized that *different considerations* enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other. *Zwickler* v. *Koota,* 389 U. S. 241, 252–255 (1967); *Dombrowski* v. *Pfister,* 380 U. S. 479 (1965)." *Roe* v. *Wade, supra,* at 166 (emphasis added).

See *Doe* v. *Bolton, supra,* at 201.

The "different considerations" entering into a decision whether to grant declaratory relief have their origins in the preceding historical summary. First, as Congress recognized in 1934, a declaratory judgment will have a less intrusive effect on the administration of state criminal laws. As was observed in *Perez* v. *Ledesma,* 401 U. S., at 124–126 (separate opinion of BRENNAN, J.):

> "Of course, a favorable declaratory judgment may nevertheless be valuable to the plaintiff though it cannot make even an unconstitutional statute disappear. A state statute may be declared unconstitutional *in toto*—that is, incapable of having constitutional applications; or it may be declared unconstitutionally vague or overbroad—that is, incapable of being constitutionally applied to the full extent of its purport. In either case, a federal declaration of unconstitutionality reflects the

opinion of the federal court that the statute cannot be fully enforced. If a declaration of total unconstitutionality is affirmed by this Court, it follows that this Court stands ready to reverse any conviction under the statute. If a declaration of partial unconstitutionality is affirmed by this Court, the implication is that this Court will overturn particular applications of the statute, but that if the statute is narrowly construed by the state courts it will not be incapable of constitutional applications. Accordingly, the declaration does not necessarily bar prosecutions under the statute, as a broad injunction would. Thus, where the highest court of a State has had an opportunity to give a statute regulating expression a narrowing or clarifying construction but has failed to do so, and later a federal court declares the statute unconstitutionally vague or overbroad, it may well be open to a state prosecutor, after the federal court decision, to bring a prosecution under the statute if he reasonably believes that the defendant's conduct is not constitutionally protected and that the state courts may give the statute a construction so as to yield a constitutionally valid conviction. Even where a declaration of unconstitutionality is not reviewed by this Court, the declaration may still be able to cut down the deterrent effect of an unconstitutional state statute. The persuasive force of the court's opinion and judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew. Finally, the federal court judgment may have some *res judicata* effect, though this point is not free from difficulty and the governing rules remain to be developed with

a view to the proper workings of a federal system. What is clear, however, is that even though a declaratory judgment has 'the force and effect of a final judgment,' 28 U. S. C. § 2201, it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt." [19]  (Footnote omitted.)

Second, engrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate.

"Were the law to be that a plaintiff could not obtain a declaratory judgment that a local ordinance was unconstitutional when no state prosecution is pending unless he could allege and prove circumstances justifying a federal injunction of an existing state prosecution, the Federal Declaratory Judgment Act would have been *pro tanto* repealed." *Wulp* v. *Corcoran,* 454 F. 2d 826, 832 (CA1 1972) (Coffin, J.).

See *Perez* v. *Ledesma,* 401 U. S., at 116 (separate opinion of BRENNAN, J.). Thus, the Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injury—a traditional prerequisite to injunctive relief,

---

[19] The pending prosecution of petitioner's handbilling companion does not affect petitioner's action for declaratory relief. In *Roe* v. *Wade,* 410 U. S. 113 (1973), while the pending prosecution of Dr. Hallford under the Texas Abortion law was found to render his action for declaratory and injunctive relief impermissible, this did not prevent our granting plaintiff Roe, against whom no action was pending, a declaratory judgment that the statute was unconstitutional. *Id.,* at 125–127, 166–167; see *Lewis* v. *Kugler,* 446 F. 2d 1343, 1349 (CA3 1971).

having no equivalent in the law of declaratory judgments, see *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 241 (1937); *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249, 264 (1933)—precluded the granting of declaratory relief.

The only occasions where this Court has disregarded these "different considerations" and found that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications. See *Great Lakes Co.* v. *Huffman,* 319 U. S. 293 (1943) (federal policy against interfering with the enforcement of state tax laws); [20] *Samuels* v. *Mackell,* 401 U. S. 66 (1971). In the instant case, principles of federalism not only do not preclude federal intervention, they compel it. Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head. When federal claims are premised on 42 U. S. C. § 1983 and 28 U. S. C. § 1343 (3)—as they are here—we have not required exhaustion of state judicial or administrative remedies,

---

[20] In *Great Lakes Co.* v. *Huffman,* employers sought a declaration that a state unemployment compensation scheme imposing a tax upon them was unconstitutional as applied. Although not relying on the precise terms of 28 U. S. C. § 41 (1) (1940 ed.), now 28 U. S. C. § 1341, which ousts the district courts of jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State," the Court, recognizing the unique effects of anticipatory adjudication on tax administration, held that declaratory relief should be withheld when the taxpayer was provided an opportunity to maintain a refund suit after payment of the disputed tax. "In contrast, there is no statutory counterpart of 28 U. S. C. § 1341 applicable to intervention in state criminal prosecutions." *Perez* v. *Ledesma,* 401 U. S. 82, 128 (1971) (separate opinion of BRENNAN, J.).

recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights. See, *e. g., McNeese* v. *Board of Education,* 373 U. S. 668 (1963); *Monroe* v. *Pape,* 365 U. S. 167 (1961). But exhaustion of state remedies is precisely what would be required if both federal injunctive and declaratory relief were unavailable in a case where no state prosecution had been commenced.

## III

Respondents, however, relying principally upon our decision in *Cameron* v. *Johnson,* 390 U. S. 611 (1968), argue that, although it may be appropriate to issue a declaratory judgment when no state criminal proceeding is pending and the attack is upon the *facial validity* of a state criminal statute, such a step would be improper where, as here, the attack is merely upon the constitutionality of the statute as applied, since the State's interest in unencumbered enforcement of its laws outweighs the minimal federal interest in protecting the constitutional rights of only a single individual. We reject the argument.

In *Cameron* v. *Johnson,* the appellants sought a declaratory judgment that a Mississippi anti-picketing law was an overly broad and vague regulation of protected expression and an injunction restraining *pending* prosecutions against them for violations of the statute. We agreed with the District Court that the statute was not overly broad or vague and that nothing in the record supported appellants' assertion that they were being prosecuted in bad faith. In that circumstance, we held that "[t]he mere possibility of erroneous application of the statute does not amount 'to the irreparable injury necessary to justify a disruption of orderly state proceedings.' . . . The issue of guilt or innocence is for the state court at the criminal trial; the State was not required to prove appellants guilty in the federal proceeding to

escape the finding that the State had no expectation of securing valid convictions." *Id.,* at 621. Our holding in *Cameron* was thus that the state courts in which prosecutions were already pending would have to be given the first opportunity to correct any misapplication of the state criminal laws; *Cameron* is plainly not authority for the proposition that, in the absence of a pending state proceeding, a federal plaintiff may not seek a declaratory judgment that the state statute is being applied in violation of his constitutional rights.

Indeed, the State's concern with potential interference in the administration of its criminal laws is of lesser dimension when an attack is made upon the constitutionality of a state statute as applied. A declaratory judgment of a lower federal court that a state statute is invalid *in toto*—and therefore incapable of any valid application—or is overbroad or vague—and therefore no person can properly be convicted under the statute until it is given a narrowing or clarifying construction, see, *e. g., United States* v. *Thirty-seven Photographs,* 402 U. S. 363, 369 (1971); *Gooding* v. *Wilson,* 405 U. S. 518, 520 (1972)—will likely have a more significant potential for disruption of state enforcement policies than a declaration specifying a limited number of impermissible applications of the statute. While the federal interest may be greater when a state statute is attacked on its face, since there exists the potential for eliminating any broad-ranging deterrent effect on would-be actors, see *Dombrowski* v. *Pfister,* 380 U. S. 479 (1965), we do not find this consideration controlling. The solitary individual who suffers a deprivation of his constitutional rights is no less deserving of redress than one who suffers together with others.[21]

---

[21] Abstention, a question "entirely separate from the question of granting declaratory or injunctive relief," *Lake Carriers' Assn.* v.

We therefore hold that, regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.[22]   The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART, with whom THE CHIEF JUSTICE joins, concurring.

While joining the opinion of the Court, I add a word by way of emphasis.

---

*MacMullan,* 406 U. S. 498, 509 n. 13 (1972), might be more appropriate when a challenge is made to the state statute as applied, rather than upon its face, since the reach of an uncertain state statute might, in that circumstance, be more susceptible of a limiting or clarifying construction that would avoid the federal constitutional question. Cf. *Zwickler* v. *Koota,* 389 U. S., at 249–252, 254; *Baggett* v. *Bullitt,* 377 U. S. 360, 375–378 (1964).

[22] Some two years after petitioner attempted to handbill at the shopping center, respondent Hudgens, the owner of the center, commenced an action in the Superior Court of Fulton County seeking a declaration of his rights concerning the center's rules against handbilling and related activities.   We were advised at oral argument that the state action had been dismissed by the trial court but that an appeal is pending before the Georgia Supreme Court.   Since we do not require petitioner first to seek vindication of his federal rights in a state declaratory judgment action, see *Lake Carriers' Assn.* v. *MacMullan, supra,* at 510; *Wisconsin* v. *Constantineau,* 400 U. S. 433 (1971), consideration of abstention by the District Court would be inappropriate unless the action commenced by respondent Hudgens could be shown to present a substantial and immediate possibility of obviating petitioner's federal claim by a decision on state law grounds. Cf. *Askew* v. *Hargrave,* 401 U. S. 476, 478 (1971); *Reetz* v. *Bozanich,* 397 U. S. 82 (1970).

Our decision today must not be understood as authorizing the invocation of federal declaratory judgment jurisdiction by a person who thinks a state criminal law is unconstitutional, even if he genuinely feels "chilled" in his freedom of action by the law's existence, and even if he honestly entertains the subjective belief that he may now or in the future be prosecuted under it.

As the Court stated in *Younger* v. *Harris,* 401 U. S. 37, 52:

> "The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision . . . ."

See also *Boyle* v. *Landry,* 401 U. S. 77, 80–81.

The petitioner in this case has succeeded in objectively showing that the threat of imminent arrest, corroborated by the actual arrest of his companion, has created an actual concrete controversy between himself and the agents of the State. He has, therefore, demonstrated "a genuine threat of enforcement of a disputed state criminal statute . . . ."[*]  Cases where such a "genuine threat" can be demonstrated will, I think, be exceedingly rare.

MR. JUSTICE WHITE, concurring.

I offer the following few words in light of MR. JUSTICE REHNQUIST's concurrence in which he discusses the impact on a pending federal action of a later filed criminal prosecution against the federal plaintiff, whether a federal court may enjoin a state criminal prosecution under a statute the federal court has earlier declared unconstitu-

---

[*]See *ante,* at 475.  Whether, in view of "recent developments," the controversy is a continuing one, will be for the District Court to determine on remand.  See *ante,* at 460.

tional at the suit of the defendant now being prosecuted, and the question whether that declaratory judgment is res judicata in such a later filed state criminal action.

It should be noted, first, that his views on these issues are neither expressly nor impliedly embraced by the Court's opinion filed today. Second, my own tentative views on these questions are somewhat contrary to my Brother's.

At this writing at least, I would anticipate that a final declaratory judgment entered by a federal court holding particular conduct of the federal plaintiff to be immune on federal constitutional grounds from prosecution under state law should be accorded res judicata effect in any later prosecution of that very conduct. There would also, I think, be additional circumstances in which the federal judgment should be considered as more than a mere precedent bearing on the issue before the state court.

Neither can I at this stage agree that the federal court, having rendered a declaratory judgment in favor of the plaintiff, could not enjoin a later state prosecution for conduct that the federal court has declared immune. The Declaratory Judgment Act itself provides that a "declaration shall have the force and effect of a final judgment or decree," 28 U. S. C. § 2201; eminent authority anticipated that declaratory judgments would be res judicata, E. Borchard, Declaratory Judgments 10–11 (2d ed. 1941); and there is every reason for not reducing declaratory judgments to mere advisory opinions. *Toucey* v. *New York Life Insurance Co.,* 314 U. S. 118 (1941), once expressed the view that 28 U. S. C. § 2283 forbade injunctions against relitigation in state courts of federally decided issues, but the section was then amended to overrule that case, the consequence being that "[i]t is clear that the Toucey rule

is gone, and that to protect or effectuate its judgment a federal court may enjoin relitigation in the state court." C. Wright, Federal Courts 180 (2d ed. 1970). I see no more reason here to hold that the federal plaintiff must always rely solely on his plea of res judicata in the state courts. The statute provides for "[f]urther necessary or proper relief . . . against any adverse party whose rights have been determined by such judgment," 28 U. S. C. § 2202, and it would not seem improper to enjoin local prosecutors who refuse to observe adverse federal judgments.

Finally, I would think that a federal suit challenging a state criminal statute on federal constitutional grounds could be sufficiently far along so that ordinary consideration of economy would warrant refusal to dismiss the federal case solely because a state prosecution has subsequently been filed and the federal question may be litigated there.

Mr. Justice Rehnquist, with whom The Chief Justice joins, concurring.

I concur in the opinion of the Court. Although my reading of the legislative history of the Declaratory Judgment Act of 1934 suggests that its primary purpose was to enable persons to obtain a definition of their rights before an actual injury had occurred, rather than to palliate any controversy arising from *Ex parte Young,* 209 U. S. 123 (1908), Congress apparently was aware at the time it passed the Act that persons threatened with state criminal prosecutions might choose to forgo the offending conduct and instead seek a federal declaration of their rights. Use of the declaratory judgment procedure in the circumstances presented by this case seems consistent with that congressional expectation.

If this case were the Court's first opportunity to deal with this area of law, I would be content to let the

matter rest there. But, as our cases abundantly illustrate, this area of law is in constant litigation, and it is an area through which our decisions have traced a path that may accurately be described as sinuous. Attempting to accommodate the principles of the new declaratory judgment procedure with other more established principles—in particular a proper regard for the relationship between the independent state and federal judiciary systems—this Court has acted both to advance and to limit the Act. Compare *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227 (1937), and *Zwickler* v. *Koota,* 389 U. S. 241 (1967), with *Great Lakes Co.* v. *Huffman,* 319 U. S. 293 (1943), and *Samuels* v. *Mackell,* 401 U. S. 66 (1971). Because the opinion today may possibly be read by resourceful counsel as commencing a new and less restrictive curve in this path of adjudication, I feel it is important to emphasize what the opinion does and does not say.

To begin with, it seems appropriate to restate the obvious: the Court's decision today deals only with declaratory relief and with threatened prosecutions. The case provides no authority for the granting of any injunctive relief nor does it provide authority for the granting of any relief at all when prosecutions are pending. The Court quite properly leaves for another day whether the granting of a declaratory judgment by a federal court will have any subsequent res judicata effect or will perhaps support the issuance of a later federal injunction. But since possible resolutions of those issues would substantially undercut the principles of federalism reaffirmed in *Younger* v. *Harris,* 401 U. S. 37 (1971), and preserved by the decision today, I feel it appropriate to add a few remarks.

First, the legislative history of the Declaratory Judgment Act and the Court's opinion in this case both

recognize that the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity.[1] There is nothing in the Act's history to suggest that Congress intended to provide persons wishing to violate state laws with a federal shield behind which they could carry on their contemplated conduct. Thus I do not believe that a federal plaintiff in a declaratory judgment action can avoid, by the mere filing of a complaint, the principles so firmly expressed in *Samuels, supra.* The plaintiff who continues to violate a state statute after the filing of his federal complaint does so both at the risk of state prosecution and at the risk of dismissal of his federal lawsuit. For any arrest prior to resolution of the federal action would constitute a pending prosecution and bar declaratory relief under the principles of *Samuels.*

Second, I do not believe that today's decision can properly be raised to support the issuance of a federal injunction based upon a favorable declaratory judgment.[2]

---

[1] The report accompanying the Senate version of the bill stated: "The procedure has been especially useful in avoiding the necessity, now so often present, of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages. So now it is often necessary, in the absence of the declaratory judgment procedure, to violate or purport to violate a statute in order to obtain a judicial determination of its meaning or validity. . . . Persons now often have to act at their peril, a danger which could be frequently avoided by the ability to sue for a declaratory judgment as to their rights or duties." S. Rep. No. 1005, 73d Cong., 2d Sess., 2–3 (1934).

Petitioner in this case, of course, did cease his handbilling activities after the warning of arrest.

[2] In *Samuels* v. *Mackell,* 401 U. S. 66, 72 (1971), the Court expressed concern that a declaratory judgment issued while a state prosecution was pending "might serve as the basis for a subsequent injunction against those proceedings . . . ." The Court recognized that this chain of litigation would "result in a clearly improper inter-

The Court's description of declaratory relief as " 'a milder alternative to the injunction remedy,' " *ante,* at 467, having a "less intrusive effect on the administration of state criminal laws" than an injunction, *ante,* at 469, indicates to me critical distinctions which make declaratory relief appropriate where injunctive relief would not be. It would all but totally obscure these important distinctions if a successful application for declaratory relief came to be regarded, not as the conclusion of a lawsuit, but as a giant step toward obtaining an injunction against a subsequent criminal prosecution. The availability of injunctive relief must be considered with an eye toward the important policies of federalism which this Court has often recognized.

If the rationale of cases such as *Younger* and *Samuels* turned in any way upon the relative ease with which a federal district court could reach a conclusion about the constitutionality of a challenged state statute, a pre-existing judgment declaring the statute unconstitutional as applied to a particular plaintiff would, of course, be a factor favoring the issuance of an injunction as "further relief" under the Declaratory Judgment Act. But, except for statutes that are " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph . . . ,' " *Younger* v. *Harris, supra,* at 53, the rationale of those cases has no such basis. Their direction that federal courts not interfere with state prosecutions does not vary depending on the closeness of the constitutional issue or on the degree of confidence which the federal court possesses in the correctness of its conclusions on the constitutional

ference with the state proceedings." *Ibid.* As discussed, *infra,* I believe that such improper interference would be present even though the declaratory judgment itself were issued prior to the time of the federal plaintiff's arrest.

point. Those decisions instead depend upon considerations relevant to the harmonious operation of separate federal and state court systems, with a special regard for the State's interest in enforcing its own criminal laws, considerations which are as relevant in guiding the action of a federal court which has previously issued a declaratory judgment as they are in guiding the action of one which has not. While the result may be that injunctive relief is not available as "further relief" under the Declaratory Judgment Act in this particular class of cases whereas it would be in similar cases not involving considerations of federalism, this would be no more a *pro tanto* repeal of that provision of the Declaratory Judgment Act than was *Younger* a *pro tanto* repeal of the All Writs Act, 28 U. S. C. § 1651.

A declaratory judgment is simply a statement of rights, not a binding order supplemented by continuing sanctions. State authorities may choose to be guided by the judgment of a lower federal court, but they are not compelled to follow the decision by threat of contempt or other penalties. If the federal plaintiff pursues the conduct for which he was previously threatened with arrest and is in fact arrested, he may not return the controversy to federal court, although he may, of course, raise the federal declaratory judgment in the state court for whatever value it may prove to have.[3] In any event, the defendant at that point is able to present his case

[3] The Court's opinion notes that the possible res judicata effect of a federal declaratory judgment in a subsequent state court prosecution is a question " 'not free from difficulty.' " *Ante*, at 470. I express no opinion on that issue here. However, I do note that the federal decision would not be accorded the *stare decisis* effect in state court that it would have in a subsequent proceeding within the same federal jurisdiction. Although the state court would not be compelled to follow the federal holding, the opinion might, of course, be viewed as highly persuasive.

for full consideration by a state court charged, as are the federal courts, to preserve the defendant's constitutional rights. Federal interference with this process would involve precisely the same concerns discussed in *Younger* and recited in the Court's opinion in this case.[4]

Third, attempts to circumvent *Younger* by claiming that enforcement of a statute declared unconstitutional by a federal court is *per se* evidence of bad faith should not find support in the Court's decision in this case. As the Court notes, quoting my Brother BRENNAN's separate opinion in *Perez* v. *Ledesma,* 401 U. S. 82, 125:

> "The persuasive force of the [federal] court's opinion and judgment *may* lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction *may* be changed, or the legislature *may* repeal the statute and start anew." (Emphasis added.)

This language clearly recognizes that continued belief in the constitutionality of the statute by state prosecutorial officials would not commonly be indicative of bad faith and that such allegations, in the absence of highly unusual circumstances, would not justify a federal

---

[4] The Court's opinion says:

"Sensitive to principles of equity, comity, and federalism, we recognized in *Younger* v. *Harris,* [401 U. S. 37 (1971),] that federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions. We were cognizant that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts 'to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . .' *Robb* v. *Connolly,* 111 U. S. 624, 637 (1884)." *Ante,* at 460–461.

court's departure from the general principles of restraint discussed in *Younger*.

If the declaratory judgment remains, as I think the Declaratory Judgment Act intended, a simple declaration of rights without more, it will not be used merely as a dramatic tactical maneuver on the part of any state defendant seeking extended delays. Nor will it force state officials to try cases time after time, first in the federal courts and then in the state courts. I do not believe Congress desired such unnecessary results, and I do not think that today's decision should be read to sanction them. Rather the Act, and the decision, stand for the sensible proposition that both a potential state defendant, threatened with prosecution but not charged, and the State itself, confronted by a possible violation of its criminal laws, may benefit from a procedure which provides for a declaration of rights without activation of the criminal process. If the federal court finds that the threatened prosecution would depend upon a statute it judges unconstitutional, the State may decide to forgo prosecution of similar conduct in the future, believing the judgment persuasive. Should the state prosecutors not find the decision persuasive enough to justify forbearance, the successful federal plaintiff will at least be able to bolster his allegations of unconstitutionality in the state trial with a decision of the federal district court in the immediate locality. The state courts may find the reasoning convincing even though the prosecutors did not. Finally, of course, the state legislature may decide, on the basis of the federal decision, that the statute would be better amended or repealed. All these possible avenues of relief would be reached voluntarily by the States and would be completely consistent with the concepts of federalism discussed above. Other more intrusive forms of relief should not be routinely available.

These considerations should prove highly significant in reaching future decisions based upon the decision rendered today. For the present it is enough to say, as the Court does, that petitioner, if he successfully establishes the existence of a continuing controversy on remand, may maintain an action for a declaratory judgment in the District Court.