Oscar **FERNANDEZ**, Plaintiff,

v.

**STATE OF GEORGIA, et al.,**
**Defendants.**

Civ. A. No. 89–210–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

July 20, 1989.

L. Robert Lovett, Macon, Ga., for plaintiff.

Eddie Snelling, Jr., Atlanta, Ga., for defendants.

### ORDER

OWENS, Chief Judge.

Plaintiff, Oscar Fernandez, was born in Havana, Cuba on April 14, 1964. In July of 1971, plaintiff moved to the United States from Cuba along with his mother and sister. He lived in Miami, Florida as a resident alien, where he was educated in the public school system. Plaintiff became a naturalized citizen of the United States on January 4, 1983. After becoming a naturalized citizen, plaintiff served in the United States Coast Guard for approximately two years. After discharge from the Coast Guard, plaintiff was employed by the Houston County Sheriff's Department as a highway patrol deputy.

In the fall of 1988, plaintiff submitted an application to the State Merit System for the positions of radio operator and trooper with the Georgia Department of Public Safety. Plaintiff was informed that the "trooper's test" was not available because there were no trooper positions available at that time. He was told that his application would be held on file for one year. Subsequently, plaintiff accepted a position as a radio operator, beginning work on April 1, 1989.

On or about March 30, 1989, plaintiff and Trooper Danny Ray met with defendant Earp at Georgia State Patrol Headquarters in Atlanta, Georgia. At that time, defendant Earp informed the plaintiff of O.C. G.A. § 35–2–43(a), which he interpreted as prohibiting plaintiff from becoming a state patrol trooper.

Thereafter, the Department of Public Safety published a notice in all Georgia State Patrol posts which stated, "[a]ny departmental employee who wants to take the trooper test must send a completed State Merit System application to the personnel office B no later than May 17, 1989. Employees will be notified of date and location of test." Plaintiff was selected to take the "trooper test" on June 1, 1989. However, on May 30, 1989, Cynthia Mitchell, in her official capacity as Personnel Director for the Georgia Department of Public Safety, informed plaintiff's supervisor that plaintiff would not be allowed to take the "trooper test" because he was a temporary-status employee. Ms. Mitchell stated further that the Department's policy was that an employee had to be on permanent status in order to take the test. Permanent status is defined as employment in excess of six months.

Plaintiff then filed the instant action for a declaratory judgment that section 35–2–43(a) insofar as it excludes naturalized citizens from employment as officers or troopers in the Uniform Division of the Georgia Department of Public Safety is violative of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, and for injunction against its enforcement.

Upon the hearing of this matter on July 10, 1989, the parties entered into the following stipulation. The parties agreed the plaintiff would drop his request for a preliminary injunction as well as his constitutional challenge of the Department's permanent status requirement for those employees seeking to take the "trooper test." It was further agreed that plaintiff would be eligible to take the "trooper test" after a six-month period, and should there be a trooper class in October when plaintiff achieves permanent status, he would be permitted to take the "trooper test" at that time.

The stipulations of the parties, however, do not resolve the issue at hand. Even if plaintiff is permitted to take the "trooper test" in October, section 35-2-43(a) would prevent him from being considered eligible to hold the position of officer or trooper with the Georgia Department of Public Safety. Therefore, an actual controversy exists in the case *sub judice* which can be redressed by deciding the issue at hand.

■ As a threshold matter, the court is confronted with defendants' argument that because, subsequent to the filing of the instant action, defendant Earp filed in state court a request for declaratory judgment on the constitutionality of section 35-2-43(a) based upon state law principles, this court should abstain from any consideration of the constitutionality of the statute pending a determination by the state court.

■ It should first be noted that abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). In applying the doctrine of abstention, a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Supreme Court has stated that in circumstances where the resolution of the federal constitutional question is dependent upon or may be materially altered by the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on question of state law, and premature constitutional adjudication. *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50, 55 (1965). The doctrine, however, should only be applied in situations where the issue of state law is uncertain. *Id.*

Defendants here argue that because section 35-2-43(a) has never been construed by state courts, this case involves an unsettled question of state law making abstention appropriate. However, in *Harman* the Supreme Court held, "[i]f the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." *Id.* at 534–35, 85 S.Ct. at 1182.

Section 35-2-43(a) is clear, unambiguous, and not fairly susceptible of a reading that would avoid the necessity of constitutional adjudication. The statute clearly restricts appointment as an officer or trooper in the Uniform Division of the Georgia Department of Public Safety to native-born citizens of the United States. By its own terms, it excludes naturalized citizens from employment as an officer or trooper in the Uniform Division of the Georgia Department of Public Safety. There is nothing in the legislation which leaves reasonable room for construction by the Georgia courts which would avoid, in whole or in part, the necessity of federal constitutional adjudication. The federal right is not in any way entangled in a skein of state law that must be untangled before the federal case can proceed. The right alleged to have been violated is plainly federal in origin and nature. Plaintiff here asserts that the defendants are depriving him of rights protected by the Fourteenth Amendment of the Constitution of the United States. Whether defendants conduct is legal or illegal as a matter of state law is immaterial. *McNeese v. Board of Education*, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961) (A federal plaintiff suing under § 1983 need not exhaust state administrative or judicial remedies before filing his action under § 1983 in federal court).

Defendants also contend that principles of comity and federalism weigh in favor of abstention. In support of this contention the defendants rely on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, particularly *Penn-*

*zoil Company v. Texaco,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Defendants' reliance on these authorities is misplaced.

In *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Supreme Court held that "[t]he relevant principles of equity, comity and federalism have little force in the absence of a pending state proceeding." *Id.* at 462, 94 S.Ct. at 1217. The court explained:

> When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceeding or disruption of the state criminal justice system, nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.

*Id.*

Moreover, the Supreme Court in *Younger* expressly stated, "[w]e express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." *Younger v. Harris,* 401 U.S. at 41, 91 S.Ct. at 749.

In the instant case the action by plaintiff was filed in this court on June 14, 1989. Defendant Earp's state court action was not filed until June 22, 1989. Therefore, the principles of comity and federalism enunciated in *Younger* and followed in *Pennzoil* do not apply in the instant case, there having been no action regarding the constitutionality of section 35–2–43(a) pending in state court at the time the plaintiff filed his action with this court.

Abstention under these circumstances would amount to shirking the solem responsibility of the federal courts to "guard, enforce and protect every right granted or secured by the Constitution of the United States." *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Robb v. Connolly,* 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884). Therefore, this court declines to abstain from ruling on the constitutionality of O.C.G.A. § 35–2–43(a).

■ Section 35–2–43(a) provides in pertinent part:

> a) No person shall be eligible for appointment as an officer or trooper of the Uniform Division *unless such person is a native-born citizen of the United States....* (emphasis added).

The term "native" means "one who owes his domicile or citizenship to the fact of his birth within the country referred to." Black's Law Dictionary, 1176 (4th ed. 1968). Section 35–2–43(a) clearly creates two classifications of citizens: native-born citizens and foreign-born naturalized citizens. It allows for discrimination in hiring based upon the national origin of the particular applicant. Such unequal treatment of persons invokes consideration of rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This is essentially a direction that all persons similarly situated should be treated alike. *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3256, 87 L.Ed.2d 313, 320 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

The Supreme Court has held citizenship obtained through naturalization is not second class citizenship. *Knauer v. United States,* 328 U.S. 654, 658, 66 S.Ct. 1304, 1307, 90 L.Ed. 1500 (1946). Similarly, in *Schneider v. Rusk,* the Supreme Court held:

> ... the rights of citizenship of the native born and of the naturalized person are of the same dignity and are coextensive. The only difference drawn by the Constitution is that only the "natural born" citizen is eligible to be President. Art. II, § 1. While the rights of citizenship of the native born derive from § 1 of the Fourteenth Amendment and the rights of the naturalized citizen derive from satisfying, free of fraud, the requirements set by Congress, the latter, apart from the exception noted, "becomes a member of the society, possessing all the rights of a native citizen and standing, in the view

of the Constitution, on footing of a native."

377 U.S. 163, 166, 84 S.Ct. 1187, 1189, 12 L.Ed.2d 218 (1964); *Luria v. United States,* 231 U.S. 9, 22, 34 S.Ct. 10, 13, 58 L.Ed. 101, 105 (1913). Thus, native-born and naturalized citizens of the United States are persons similarly situated in the view of the Constitution and should be treated alike.

Under Equal Protection analysis, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981). However, the general rule gives way when, as here, a statute classifies by race, alienage or national origin. *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254 (citations omitted). The Supreme Court has held that factors such as race, alienage or natioanl origin are:

> so seldom relevant to the achievement of any legitimate state interest that laws grounded on such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others. For these reasons ... these laws are subjected to strict scrutiny tailored to serve a compelling state interest.

*Id.; McLaughlin v. Florida,* 379 U.S. 184, 192, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964).

In the case *sub judice,* the court must apply strict scrutiny to any purpose offered by the state for the classification drawn by the statute. However, the state has failed to offer any purpose for the classification of United States citizens in § 35–2–43(a) and the resulting discrimination against naturalized citizens. Indeed, given the holdings of the Supreme Court in *Knauer* and *Schneider,* any purpose offered by the State of Georgia must fail equal protection scrutiny.

The court finds that the State of Georgia has not met its burden of showing a compelling state interest for excluding naturalized citizens of the United States from being eligible for the position of officer or trooper with the Georgia Department of Public Safety. The court further finds that section 35–2–43(a) distinguishes between native-born and naturalized citizens of the United States based on the latter's national origin. Such a distinction is constitutionally impermissible. The only distinction drawn by the Constitution is that only native-born citizens are eligible to be President. The court thus finds section 35–2–43(a), insofar as it prohibits naturalized citizens of the United States from being eligible for the position of officer or trooper with the Uniform Division of the Georgia Department of Public Safety, to be unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

SO ORDERED.