Martin SIEGEL et al.

v.

Gerald SALISBURY et al.

Civ. A. No. CA 74–40 Erie.

United States District Court,
W. D. Pennsylvania.

July 22, 1974.

John P.Leemhuis, Erie, Pa., for plaintiffs.

Charles K. Moffatt, Erie, Pa., for defendants.

## OPINION AND ORDER

KNOX, District Judge.

The court is concerned here with the rights of freedom of expression contained in the First Amendment to the United States Constitution being Article I of the Bill of Rights [1] which have

---

1. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

been applied to the states through the Fourteenth Amendment. The case results from an Ordinance passed by Millcreek Township, Erie County, Pennsylvania, a second-class township of Pennsylvania, copy of which is attached hereto as Appendix I.

While Millcreek is a second-class township under Pennsylvania law, nevertheless we must bear in mind that it is a suburban township surrounding the City of Erie on the south and west and has a population, according to the 1970 census, of approximately 40,000 making it one of the largest, if not the largest, second-class township in the state. It, as well as the hundreds of other local municipalities in Pennsylvania, enjoys the legislative police powers by amendments to the second-class township code in recent years. This Ordinance was enacted pursuant to such police power. See 53 Purdon's Pa.Stats. 65,712, 65,762 and 65,741. This Ordinance prohibiting public displays of photographs, drawings and other visual material depicting nudity or various types of sexual activities declares the same to be a nuisance when so displayed as to be visible without solicitation by members of the public in any building, state highway or township road.

It appears from the testimony taken in this case that the Ordinance at first was sought by a small group of people in the township.[2] The original object was to prevent displays at drive-in motion picture lots where the screen was visible from the adjacent public highway. As a result of this, members of the public were treated to various scenes from X-rated movies, apparently to their annoyance. As study of the Ordinance went on, however, it was determined to make it broad enough to include displays of magazines and book covers in book stores and other places where books and periodicals were sold. The testimony is, however, that the only prosecutions brought under the Ordinance arise out of displays of magazines at the book store of the plaintiff Jan-Beck, Inc.

The plaintiff, Jan-Beck, Inc., is operator of a book and periodical store in the West Erie Plaza, a shopping center in Millcreek Township, the store being known as the "Candy World Book City". It is an establishment engaged in selling of books, paperback books, magazines and other publications and materials. The plaintiff, Martin Siegel, against whom citations have been issued and scheduled for trial until a temporary restraining order was issued by this court is the leading stockholder and president of this establishment. At the time of hearing on the temporary restraining order, Lakeport Distributors, Inc., a wholesaler and distributor of books and periodicals was added as a party plaintiff pursuant to order of the court. However, its place of business is located in the City of Erie and the evidence does not disclose any threats to institute prosecutions against this corporate entity. Plaintiff Siegel is a director of Lakeport.

The defendants are three Supervisors of Millcreek Township; Marshall, Chief of Police; Stevenson, the Police Officer in charge of enforcement of this Ordinance who issued the citations in question; and Charles R. Wise, District Justice of the Peace before whom prosecutions are now pending.

The Ordinance in question, No. 74–6, was passed April 21, 1974. On May 21, 1974, and again on May 23, 1974, the defendant James Stevenson of the Millcreek Police appeared at the book store in question and on each date issued citations against plaintiff Siegel for allegedly violating the Ordinance through displaying at the book store certain magazines which were offered in evidence at the time of hearing and the covers of which are alleged to violate the Ordinance. The lapse of a day between the

2. Supervisor Salisbury testified that there were a total of twenty five or thirty people in the organization which sought the enactment of the Ordinance and that they had also received five other complaints relative to various displays.

first citation and the second citation was for the purpose of determining if plaintiff Siegel would voluntarily comply with the Ordinance. Upon communicating with defendant Marshall, Chief of Police, he was informed that they proposed to enforce the. Ordinance. The court determines that this was threat to put into effect the penal provisions of the Ordinance which, in Section 3, provides for a fine or penalty of not more than $300 and costs and in default thereof, imprisonment for not more than 30 days. "Each day's continuance of such violation shall constitute a separate offense punishable by a like fine or penalty". Hearing was set for June 6, 1974, before defendant Wise, Justice of the Peace in Millcreek Township. It is a simple matter of arithmetic to determine that if each day's exhibition of such magazines claimed to be in violation of the Ordinance could result in a $300 fine, then over the year assuming 300 days when the shop would be open, the fines could total $90,000 and in default of payment thereof, Siegel is subject to 9,000 days in jail. The court finds it a fact, as a legitimate inference from the evidence, that the defendants do intend to prosecute the plaintiff Siegel for each and every day in this manner and if it is determined that Siegel is not the one responsible for violation of the Ordinance, then such prosecutions will be brought against the corporation Jan-Beck, Inc. There is no evidence, however, of any threats or indication that the Ordinance will be enforced against Lakeport Distributors, Inc.

This complaint was filed on June 3, 1974, with a motion for temporary restraining order. This member of the court immediately fixed June 5, 1974, at Erie as the time and place of hearing on the application. After a short hearing at which plaintiff's evidence was taken showing a prima facie case of violation of constitutional rights under the First Amendment, a temporary restraining order was issued restraining the prosecution until June 12, 1974, when a hearing was ordered held on plaintiff's application for preliminary injunction. On June 6, 1974, an amended complaint was filed detailing more specifically the grounds for plaintiff's action. Hearing was held on the preliminary injunction on June 12, 1974, and oral arguments were thereafter held on June 14, 1974. The parties, except defendant Wise, have filed extensive briefs in support of their respective positions. By agreement of counsel, the temporary restraining order was extended to and including July 22, 1974. At the hearing on the preliminary injunction, it was stipulated between counsel that defendant Wise did not care to take any position one way or another with respect to the matter, he being a judicial officer, but it was stated that he did consider that he had no authority to declare a municipal ordinance unconstitutional as being in violation of the Constitution of the United States.

The court is thus faced with two issues: I. Are the nudity sections of Ordinance 74–6 in violation of Amendment I to the Constitution of the United States as applied to the states through the Fourteenth Amendment? II. Does this court have any authority to interfere with the prosecutions of the plaintiffs or any of them before Justice of the Peace Wise?

I. *The Validity Of The Nudity Sections Of The Ordinance.*

This Ordinance represents a novel approach to the problem of obscenity. It does not forbid the sale and distribution of magazines and books which may or may not be obscene under the decisions of the United States Supreme Court. Rather, it limits its impact to the "public displays of photographs, drawings and other visual material depicting nudity _ _ _" or certain described sexual activities "which appeal predominantly to prurient interest in sex". The prohibitory provision of the Ordinance, Section I, does only apply to material "depicting nudity or sexual conduct or sado masochistic activities which appeal predominantly to prurient interest in sex

when displayed so as to be visible and without solicitation by any member of the public at large, etc." It is recited, however, that "regardless whether such displays are 'obscene' within the meaning of the penal law and constitutional law, they are not constitutionally protected—".

It will be noted that it is only the magazine covers of certain magazines which are deemed violations of this Ordinance, not the contents of the magazines themselves. As to what constitutes a violation of the Ordinance, there is apparently considerable disagreement between the police department and Mr. Salisbury, the Chairman of the Board of Supervisors. Mr. Salisbury admitted that it was not the intention of the Board of Supervisors to interfere with the production of any work of art. He apparently however, does not consider photography to be an art. From the witness stand, he found only two of the magazines in question which had been seized by the police to be violations of the Ordinance whereas the police found a total of ten to be in violation. This demonstrates the vagueness of the Ordinance as to what material depicting nudity is considered to appeal predominantly to prurient interest in sex. An attempt was made to cover this in Section 2 by defining nudity but if these definitions apply, then as the court pointed out no one would be safe in publishing a picture of Venus De Milo or Michaelangelo's David upon any magazine cover in Millcreek Township.

It is obvious that it can be argued that there is some ambiguity in the Ordinance as to whether nudity in and of itself as defined in Section 2 is automatically prohibited in Section 1 unless in addition to the nudity it appears that the same appeals "predominantly to prurient interests". The confusion which this ambiguity engenders is obvious when examining the testimony of Officer Stevenson and comparing it with that of Supervisor Salisbury. There are endless arguments over whether a nipple

is concealed by hair falling over the shoulders or not, the latter resulting in impermissible nudity under the Ordinance.

It may be conceded that much of this Ordinance serves a useful purpose and the definitions of sexual conduct and sado masochistic activities constitute a valid attempt to define obscenity.

In the present case, however, we are not concerned with obscenity as such or as defined in Sections 2(b) and (c). None of the exhibits constitute obscenity in the usual sense of the word and Siegel himself stated that it is not his policy to deal in magazines displaying any such activities upon their covers. It may be admitted that the Ordinance insofar as nudity is concerned is aimed at the so-called "girlie magazines". It is noted that there is a severability clause in Section 5 of the Ordinance so that if any section or clause of the same is held unconstitutional, this shall not affect the validity of the Ordinance as a whole. Since it cannot be said that the whole Ordinance is permeated with the vice of the attack on so-called nudity, it would not seem that the Ordinance as a whole is unconstitutional. We are, however, primarily concerned in this case with the anti-nudity sections.

If the construction advocated by the township is correct, then it will mean that every time a prosecution is started, that is every day under the Ordinance, there will have to be a determination as to whether the magazine cover displaying nudity of a male or female is related to a prurient interest in sex or not. Since these are all national magazines which change every month the result will be a flood of litigation over each magazine. It will be noted that there is no attempt to have a prior determination as to whether the obscenity laws are violated before arrests are made.

At the argument, the township solicitor conceded that nudity in and of itself is not a violation of the obscenity laws. As a matter of fact in the last sentence of the preamble, Millcreek indicates that

it does not care whether the displays of nudity are obscene but nevertheless intends to prohibit them anyway.

█ That nudity in and of itself is not obscenity is certainly true where the nudity is not concerned with other sexual acts or conduct. In fact, since the hearing on the preliminary injunction in this case, the Supreme Court of the United States has itself spoken in this respect in Jenkins v. Georgia, —— U.S. ——, 94 S.Ct. 2750, 41 L.Ed.2d 640 (decided June 24, 1974), where the court said with respect to the motion picture Carnal Knowledge "there are occasional scenes of nudity, but nudity alone is not enough to make material legally obscene under the Miller standard."

██ Of course, the reverse is true that the First Amendment furnishes no protection for obscenity and it appears that the supervisors in enacting the Ordinance in question had to some extent relied upon the decision of the Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which holds that obscenity is to be judged by community standards. Apparently the supervisors thought that they could as the result of this enact an Ordinance forbidding nudity as such. The community standards set up in Miller v. California have been criticized as providing for anarchy throughout the United States and they would obviously become impossible to apply to magazines circulated on a national basis. In its broadest interpretation, this doctrine would permit the Millcreek supervisors to re-enact rules and regulations formerly in effect with respect to the Presque Isle State Park at Erie requiring men to wear tops to their bathing suits. In Jenkins v. Georgia, supra, however, the United States Supreme Court has clearly stated that regardless of local community standards, it intends to reserve to it-self the determination of saying that something is not obscene regardless of any local legislation. We find the same situation to exist here and it is our duty to say that nudity in and of itself as defined in this Ordinance is not obscene and cannot be prohibited. This is particularly true of the covers of nationally circulated magazines such as those in evidence. If this were a final order which we were entering in this case, we might be impelled to enter a declaratory judgment holding that Sections 1 and 2 of the Ordinance with respect to nudity alone are invalid as invasions of right of freedom of the press and freedom of speech. The court sees no reason to abstain from so holding until such time as the Pennsylvania courts have interpreted this Ordinance, because as stated regardless of what interpretation is given to it, it is still overly broad and vague with respect to magazine covers depicting nudity alone. The result will be a massive stream of litigation with respect to the cover of each individual magazine as to whether it displays nudity in relation to a prurient interest in sex.

The question is, though, what can this court do about these prosecutions at this time?

## II. *Right Of Federal Court To Intervene.*

The relief sought by plaintiffs is an injunction against pending and further prosecutions together with a declaratory judgment declaring the Ordinance 74–6 to be unconstitutional on its face. Jurisdiction of this court is invoked under the Civil Rights Act, 42 U.S.C. § 1983[3] and the companion grant of jurisdiction in 28 U.S.C. § 1343.

█ Initially, it will be observed that Civil Rights Actions are an exception to the Anti Injunction Act, 28 U.S. C. § 2283. Mitchum v. Foster, 407 U.S.

---

3. "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

In our inquiry as to the right of this court to intervene, we start with Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965) which holds that the federal court can grant an injunction against state prosecutions only in a case where First Amendment rights are chilled by bad faith prosecutions brought without hope of success and for purposes of harassment.

The next consideration of the problem comes in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its companions such as Samuels v. Mackall, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) and Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

In Allee v. Medrano (1974), 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566, Chief Justice Burger in concurring said:

*"The requirements of Younger are not to be evaded by artificial niceties.*

"The next step in the analysis is to define the burdens imposed by Younger v. Harris. There we held that before a federal court can interfere with state criminal proceedings great and immediate irreparable injury must be shown *'above and beyond that associated with the defense of a single prosecution brought in good faith.'* 401 U.S., at 48 [91 S.Ct. 746, at 752]. The injury must include, except in extremely rare cases, 'the usual prerequisites of bad faith and harassment.' 401 U.S., at 53 [91 S.Ct. 746, at 755]. In Younger the court made clear that the mere fact that the statute under which the federal court plaintiff is being proceeded *against is unconstitutional on its face 'does not in itself* justify an injunction against good-faith attempts to enforce it.' 401 U. S., at 54 [91 S.Ct. 746, at 755]. The Court described as important and necessary the state's task of enforcing statutes which may have an incidental inhibiting effect on First Amendment rights, 'against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution.' 401 U.S., at 52 [91 S.Ct. 746, at 574].

"Younger *principles not only mandate federal court abstention in the case of good faith enforcement of facially unconstitutional statutes, but also require that claims of unconstitutionality, other than facial invalidity, be presented, in the first instance, to the state court in which the criminal prosecution involving the claimed constitutional deprivation is pending."*

There may also be interference in highly unusual circumstances such as Helfant v. Kugler, 500 F.2d 1188 (3d Cir. 1974) where a state judge had allegedly been coerced into waiving his Fifth Amendment rights by the New Jersey Supreme Court.

▮ We find no such unusual circumstances present in this case nor do we find lack of good faith on the part of the police in instituting these prosecutions. We do find that if continued daily prosecutions continue, there may be harassment but in the opinion of this court, this is not enough to justify intervening to enjoin at this time these pending prosecutions in violation of the clear directions of the United States Supreme Court in Younger, supra.

There may be a question as to whether these actually are criminal prosecutions and whether there are adequate state avenues for review. See Philadelphia v. Home Agency, Inc., 4 Pa.Cmwlth. 174, 285 A.2d 196 (1971) where it is held that prosecutions under municipal ordinances are civil, not criminal actions. It appears to the court, however, that the principles of comity between the federal and state court systems require that there be no different treatment of prosecutions for violation of a municipal ordinance and a regular criminal prosecution. Plaintiff Siegel if adjudged guilty before defendant Wise has ample remedies available for review by the Court of Common Pleas of Erie County and thereafter by the state ap-

pellate system. We also note that defendant Wise is obligated by his oath to support and defend the Constitution of the United States.

This, however, is not the end of the matter because in Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the court held that the remedy of declaratory judgment *does* lie to determine the constitutionality of state laws and regulations *when there is no pending state prosecution and one is* threatened. But a declaratory judgment can only come as the final judgment in this case. In Steffel the court said:

"Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head. When federal claims are premised on 42 USC § 1983 and 28 USC § 1343(3)—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights. See, e. g., McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). But exhaustion of state remedies is precisely what would be required if both federal injunctive and declaratory relief were unavailable in a case where no state prosecution had been commenced."

As to plaintiff, Lakeport Distributors, no basis for relief has been shown. It sells magazines and does not display them in Millcreek. There is no threat, express or implied, of prosecution of Lakeport. It is not therefore engaged in actual controversy under Article III of the Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201.

It is also true that where there are two actual plaintiffs, one of whom is the subject of a pending prosecution and the other is not, as is the case with Jan-Beck, Inc., here, the latter may be entitled to a declaratory judgment. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, reh. den. 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973). See also Miranda v. Hicks, (C.D.Cal., Three Judge Court No. 73–2775F—June 4, 1974). 15 Criminal Law Reporter 2307 holding a California obscenity statute impermissibly vague.

The latest elucidation of Younger is found in Allee v. Medrano, supra, which is mainly concerned with enjoining police brutality but contains several references to enjoining state prosecutions which we quote:

"Younger *and its companion cases are grounded upon the special considerations which apply when a federal court is asked to intervene* with pending state criminal prosecutions. Steffel v. Thompson, 415 U.S. 452 [94 S.Ct. 1209, 39 L.Ed.2d 505]. Although both parties here have assumed the relevance of Younger, we have been unable to find any precise indication in the District Court opinion or in the record that there were pending prosecutions at the time of the District Court decision.

\* \* \* \* \* \*

"*If in fact there were no pending prosecutions, the relief could have impact only on future events in which the challenged statutes might be invoked by the appellants. Since this remains a live, continuing controversy, such relief would ordinarily be appropriate if justified by the merits of the case.*

\* \* \* \* \* \*

"As to these also *we must remand for a determination as to whether there are pending prosecutions, although if there are none the appellees might still be threatened with prosecutions in the future since these statutes are still in force.* But if there are only threatened prosecutions, and the appellees sought only declaratory relief as to the statutes, then the case would not be governed by Younger at all, but by Steffel v. Thompson, 415 U.S. 452

[94 S.Ct. 1209, 39 L.Ed.2d 505], decided this Term.

\* \* \* \* \* \*

*"If there are pending prosecutions then the District Court should determine whether they were brought in bad faith, for the purpose of harassing appellees and deterring the exercise of First Amendment rights,* so that allowing the prosecutions to proceed will result in irreparable injury to the appellees. If there are no pending prosecutions and only declaratory relief is sought, *then Steffel clearly controls and no Younger showing need be made."*

The concurring opinion of Chief Justice Burger, previously quoted in part (also dissenting as to parts not relevant here) is also illuminating:

*"If the federal court plaintiff seeks injunctive or declaratory relief based on claimed facial invalidity of a statute, the injury may derive not only from the prosecutions the plaintiff is currently facing where a violation of that statute is alleged, but also from the probability of future prosecutions* under that statute. Evidence of multiple arrests and prosecutions of persons other than the federal plaintiff under that statute *may well bear on the likelihood of future arrests* and prosecutions of the federal plaintiff.

\* \*. \* \* \* \*

*"The possibility of future arrests, under color of any state statutes, is irrelevant to proof of injury from the challenged prosecution.* It will be the rare case, indeed, where a single prosecution provides the quantum of harm that will justify interference. On the other hand, *in the case of an attack on the facial constitutionality of a statute, the likely prospect of multiple prosecutions, brought also in bad faith and without hope of conviction, for the violation of the same statute which formed the basis for the pending prosecutions of the federal court* plaintiff, might well constitute a sufficient showing of harm to justify a federal court's decision to reach the constitutionality of the statute."

In the light of the above explicit holdings of the United States Supreme Court, we conclude that this court should not intervene in the pending two citations against Siegel and the temporary restraining order issued June 5, 1974, should be dissolved and the prayer for preliminary injunction refused.

On the other hand, it is also clear following Steffel v. Thompson, supra, and Allee v. Medrano, supra, that this court does have power to issue a declaratory judgment on the complaint of Jan-Beck, Inc. determining whether and to what extent Ordinance No. 74–6 is invalid particularly with respect to the nudity provisions. This, however, would be a final judgment in the case which is not yet ripe for such an order. There is no such thing as a preliminary declaratory judgment. Defendant has now answered but there has been no stipulation that the hearings already held shall close the case and that the court shall determine the matter and enter a final decree on the testimony already taken. We shall therefore direct, in view of the importance of the matter, that an expedited pretrial schedule be adopted and fix a time for final hearing in the immediate future consistent with other prior matters pending on the court's schedule.

The foregoing opinion contains the findings of fact and reasons for the court's action as required by Rule 52(a).

## APPENDIX I

Upon motion by,                    seconded by,              the following ordinance was duly enacted,                voting in favor of enactment,
voting against enactment.

## ORDINANCE NO.

An Ordinance prohibiting the unsolicited open display of nudity, sexual conduct or sadomasochistic activities to the general public.

Whereas, the Second Class Township Code, as amended, delegates the general

supervision of the affairs of Millcreek Township, Erie County, Pennsylvania, to the Board of Supervisors; and

Whereas, said Board has the power to declare, prohibit and penalize nuisances as delegated to it by said Code, as amended, and by Acts of May 20, 1957, P.L. 174, Section 5 and March 21, 1968, P.L. No. 22, Section 1; 53 P.S. 65712; and

Whereas, said Board has the power to ordain for the proper maintenance of peace, good government, and welfare of the Township, as delegated to it by said Code, as amended, and by the Act of August 27, 1963, P.L. 1280, Section 1; 53 P.S. 65762; and

Whereas, said Code further authorizes the imposition of fines and penalties for offenses or violations of prohibited acts not exceeding $300.00 and costs or, in default of payment thereof, imprisonment for not more than thirty (30) days. Act of June 19, 1961 P.L. 486 Section 1, as amended by the Act of June 6, 1963, P.L. 73, Section 1, 53 P.S. 65741; and

Whereas, said Board has made a determination in the nature of a legislative finding that public displays of photographs, drawings and other visual material depicting nudity, or sexual conduct, or sadomasochistic activities which appeal predominantly to prurient interest in sex are offensive to any member of the public at large who is lawfully in or on any building, state highway, township road, facility, vehicle or area proximate to and in the environs of said display. Regardless whether such displays are "obscene" within the meaning of the penal law and constitutional law, they are not constitutionally protected, because they are thrust indiscriminately upon unwilling audiences of adults and children, and constitute assaults upon individual privacy.

Now, Therefore, the Board of Supervisors of Millcreek Township, Erie County, Pennsylvania, does hereby ordain and enact the following:

Section 1. It is hereby declared that any photograph, drawing, or other visual material depicting nudity, or sexual conduct, or sadomasochistic activities which appeals predominantly to prurient interest in sex when displayed so as to be visible to and without solicitation by any member of the public at large who is lawfully in or on any building, state highway or township road, facility, vehicle or area proximate to and in the environs of said display and is then and there involuntarily exposed to viewing same is declared to be and is prohibited as a nuisance offensive to the general public and further prohibited as inimicable to the maintenance by the Supervisors of the peace, good government and welfare of the Township.

Section 2. Definitions. The following definitions are applicable to Section One hereunder:

(a) "Nudity" means the showing of a human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

(b) "Sexual Conduct" means an act of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or if such person be a female, breast.

(c) "Sado-masochistic activities" means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

Section 3. Any owner, tenant or occupant of any premises or property who knowingly permits or allows the nuisance or unlawful activity aforesaid, upon any property with which he is an owner, tenant or occupant shall be subject to prosecution therefor in a summary proceeding before a district justice for such violation of and under the within ordinance and, if found guilty, shall

be subject to a fine and penalty of not more than $300.00 and costs, and in default of payment thereof, imprisonment for not more than thirty (30) days. Each days continuance of such violation shall constitute a separate offense, punishable by a like fine or penalty.

Section 4. The Board of Supervisors, in addition to other remedies, may institute any appropriate action or proceeding in law or equity to prevent such nuisance and unlawful activity.

Section 5. If any section, paragraph, sub-section, clause or provision of this Ordinance shall be declared by a Court of competent jurisdiction to be invalid such decision shall not affect the validity of this Ordinance as a whole or any part thereof. It is the intent that the remainder of this Ordinance remain in full force and effect as though the offending part had never been incorporated herein.

Enacted and Ordained, this    day of    , 1974.

Secretary, Millcreek Township
Dorothy Young

