Robert WOODS et al.

v.

LAKE DRIVE NURSING HOME,
INC., et al.

Civ. No. Y–80–2635.

United States District Court,
D. Maryland.

Dec. 10, 1980.

Paul R. Levene, Baltimore, Md., for plaintiffs.

Edgar H. Gans, Baltimore, Md., and Carl F. Ameringer, Baltimore, Md., for defendants.

## 184

MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

The plaintiffs, Robert Woods, decedent, and Luther Woods, personal representative of the estate of Robert Woods, have brought this action against the Lake Drive Nursing Home, Inc., Herman Kodeck, its Administrator, and Jacqueline Cheeks, its Director of Nursing, seeking damages for the fatal injuries sustained by Robert Woods on June 8, 1980, while a resident–patient at the Lake Drive Nursing Home. For the reasons set forth below, it is determined that this action should be dismissed for lack of subject–matter jurisdiction.

The instant action arises out of a fire at the Lake Drive Nursing Home on June 8, 1980, which proved fatal to Robert Woods, who had been a medical assistance patient there for over a year. The Amended Complaint, filed November 18, 1980, alleges that the decedent was taken to his room after supper on the evening of June 8th where he was physically restrained and left unsupervised. Within a few hours, a fire had broken out and the decedent incurred severe burn injuries resulting in his death on June 20, 1980, after a great deal of pain and suffering. The complaint contains a number of allegations regarding the necessity of and justifications for the treatment received by the decedent and attributes his death directly to the actions and breaches of duties by the defendants and their agents. Count I of the Amended Bill of Complaint basically appears to be a negligence count while Count II alleges a deprivation of the decedent's civil rights. Despite the skillful pleading of plaintiffs' counsel, however, it is the opinion of this Court that the complaint alleges facts sufficient only for a basic malpractice action grounded in state tort law and as such is not within the jurisdiction of this Court.

The plaintiffs urge federal jurisdiction upon this Court under two basic theories. In Count I, the plaintiffs contend that jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1391 and by 42 U.S.C. § 1302. In Count II, the plaintiffs based federal jurisdiction upon 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

An examination of the jurisdictional arguments propounded by plaintiffs reveals that neither theory suffices to establish federal jurisdiction under the facts of this case.

■ Section 1331 of Title 28 is the general federal question statute which confers jurisdiction upon district courts of cases "arising under" the Constitution or laws of the United States, provided that at least $10,000 is in controversy. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Neither 28 U.S.C. § 1391 nor 42 U.S.C. § 1302 provides an independent jurisdictional basis in that § 1391 is the general venue provision and § 1302 authorizes the promulgation of federal regulations regarding nursing home facilities. The apparent argument of the plaintiffs is that this latter statute, along with the federal standards promulgated thereunder (42 C.F.R. 442.1 *et seq.*), injects a sufficient federal flavor to the claim to confer jurisdiction under § 1331. Such an assertion, if accepted, would virtually obliterate any substantive limitations to § 1331 jurisdiction and as such cannot be accepted by this Court. The oft–cited opinion of Justice Cardozo in *Gully v. First National Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), accurately assessed the task of defining the scope of general federal question jurisdiction:

> "To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by." 299 U.S. at 118, 57 S.Ct. at 100.

The dispute at issue in Count I of the instant case basically involves allegations of negligence on the part of defendants and their employees. The dispute over federal regulations regarding standards for nursing home facilities is at most a collateral dispute which would reflect upon the reasonableness of the care provided to the decedent. This tangential federal aspect of plaintiffs' claim falls far short of the requirement for federal jurisdiction that the

federal law be a direct element of the plaintiffs' claim and, therefore, this Court declines to assert jurisdiction under § 1331. *See Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968), *cert. denied*, 393 U.S. 891, 89 S.Ct. 214, 21 L.Ed.2d 172.

■ The plaintiffs also assert federal jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. Section 1343(3), the jurisdictional counterpart to § 1983, confers jurisdiction over actions to redress the deprivation of rights secured by the Constitution or other federal substantive laws. *Maine v. Thiboutot*, —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Section 1343(3) provides, in pertinent part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens . . . ." 28 U.S.C. § 1343(3).

The statute was intended to vindicate only federal rights determined under federal substantive law, not ordinary state torts. *Tucker v. Duncan*, 499 F.2d 963, 965 n.1 (4th Cir. 1974); *see Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Thus, to satisfy the jurisdictional requisites of § 1343(3), the plaintiffs must allege sufficient facts not only to establish that the acts of the defendants were "under color of state law," but also that the alleged deprivation was a right, privilege or immunity secured by the Constitution or laws of the United States. The factual allegations of the complaint in the instant case fail to satisfy either requirement.

■ The plaintiffs attempt, in Count II of the Amended Complaint, to set up the denial of federal substantive rights by making numerous conclusory allegations including the deprivation of rights under the Eighth, Fifth and Fourteenth Amendments to the Constitution. Plaintiffs assert that the decedent was deprived of his civil rights

when the defendants deprived him of his liberty without due process of law and subjected him to cruel and unusual punishment. However, the specific factual allegations of the amended complaint reveal that the plaintiffs' claim is actually no more than a standard malpractice claim grounded in state tort law. The alleged "false imprisonment" of decedent arises out of the decision of a nurse's aide to strap the decedent into a lounge chair in order to physically restrain him. Plaintiffs admit that decedent was "wholly dependent upon the Defendants and their staff" (Amended Bill of Complaint, page 4) but question the necessity of and justification for the treatment provided on this particular occasion. The interest at stake in this claim is the right for an aged and infirm patient at a nursing home to receive the degree of care and treatment which is ordinarily rendered to such persons residing in nursing home facilities. The Supreme Court has expressly held that ordinary negligence does not rise to a constitutional deprivation, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and the factual allegations contained in the Amended Complaint do not substantiate any claim beyond ordinary negligence on the part of the defendants. The attempts of the plaintiffs to allege deprivations of constitutional dimensions fail for lack of substance or specificity. As the court stated in *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970):

"[A]n allegation of negligent conduct by a state public official is not sufficient, in and of itself, to bring a claim within Section 1983. More is needed than a naked averment that a tort was committed under the color of state law; the wrongdoing must amount to a deprivation of a right, privilege, or immunity secured by the Constitution and the laws of the United States. And this must be set forth with specificity; mere argumentative and conclusory allegations will not suffice."

In the instant case, the plaintiffs have done no more than make conclusory allegations regarding the deprivation of federal substantive rights and the specific facts of this

case establish no more than an ordinary state tort action, not cognizable under the jurisdiction granted by § 1343(3).

▪ Even if the factual allegations of the complaint could be found to substantiate a claim of deprivation of federal substantive rights, this Court would still lack jurisdiction under § 1343(3) because there has been no showing that defendants acted "under color of state law." Plaintiffs contend that the regulation and funding of the nursing home by the State of Maryland are so pervasive as to have created a symbiotic relationship between the State and the defendants which compels a finding of "state action" for § 1343(3) purposes. Plaintiffs further argue that a sufficient nexus exists between the complained acts of the defendants and the state government to fulfill the "state action" requirement of § 1343(3). However, this Court is unable to find that the actions of the defendants in operating a nursing home and providing care to the decedent were "under color of state law" and, thus, must decline to exercise jurisdiction under § 1343(3).

▪ Private persons who are wilfull participants in joint activities with the state may be held to be acting under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The inquiry must focus upon the state involvement with the challenged action but the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of a § 1983 action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The Supreme Court has framed the inquiry in terms of whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972). In the instant case, there undoubtedly exists an extensive amount of state regulations and funding of nursing home facilities. The State operates a comprehensive licensing procedure requiring a nursing home to submit to a detailed governmental regulatory scheme before being eligible for medicaid funds. However, the governmental involvement is no greater than that found in *Jackson v. Metropolitan Edison Co., supra*, where the Court held that a public utility subjected to extensive and detailed regulation, and probably possessed of monopoly status, was not a "state actor" for purposes of § 1983. 419 U.S. at 350–52, 95 S.Ct. at 453–454. The decision in *Jackson, supra*, also rejected the "public function" theory in a context that would certainly be more conducive to such an argument than in the instant case where plaintiffs have attempted to argue that proprietors of private, voluntary nursing homes are engaged in a "public function." If the supplying of utility service is not traditionally the exclusive prerogative of the State, 419 U.S. at 353, 95 S.Ct. at 454, this Court finds it difficult to accept an argument that supplying nursing home care should be found within the exercise of powers traditionally exclusively reserved to the State.

The plaintiffs attach great significance to the Fourth Circuit's decision in *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959 (4th Cir. 1963), *cert. denied*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964), where the requisite state action was found in the receipt by a hospital of Hill–Burton funding and its concomitant detailed regulations. The validity of that holding is subject to question given the Supreme Court's decision in *Jackson v. Metropolitan Edison Co., supra*. However, this Court need not reject the holding of *Simkins* to reach a contrary result in a case that can be distinguished factually. In *Simkins*, the Court found that the challenged discrimination had been affirmatively sanctioned by both the state and the federal government in a program under which the state had in effect assumed, as a state function, the obligation of planning for adequate hospital care. 323 F.2d at 968. In the instant case, the state has not assumed the obligation to plan for adequate nursing home facilities and there is no indication that the state has affirmatively sanctioned substandard nurs-

ing care. Furthermore, the close nexus found in *Simkins*, does not appear present in this case and renders it more analogous to *Walker v. Pierce*, 560 F.2d 609 (4th Cir. 1977), *cert. denied*, 434 U.S. 1075, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1978), where the Court found that the receipt of Hill–Burton funds alone would not supply the requisite state action. 560 F.2d at 613.

The defendants in this action are private individuals and a private corporation engaged in the delivery of health care services to aged and infirm persons. The nursing home receives significant governmental funding and has submitted itself to extensive governmental regulation. However, under the precedents discussed above, that is not sufficient to connect the State of Maryland with the defendants' action so as to make the latter's conduct attributable to the State for purposes of § 1983.

The finding of this Court that it is without jurisdiction to entertain the present case does not deprive the plaintiffs of a forum in which to pursue their claims. They have already filed an action in the Superior Court of Baltimore City and it is the opinion of this Court that that is a more appropriate forum in which to pursue the traditional state tort action being asserted by plaintiffs. The original jurisdiction of this Court is circumscribed by the dictates of statutory law and as interpreted by this Court, the instant case does not provide a proper occasion for the exercise of such jurisdiction.

Accordingly, it is this 10th day of December, 1980, by the United States District Court for the District of Maryland, ORDERED:

1. That defendants' motion to dismiss for lack of jurisdiction over the subject matter be, and the same is, hereby GRANTED;

2. That plaintiffs' action be, and the same is, hereby DISMISSED without prejudice; and

3. That a copy of this Memorandum and Order be sent to all parties.