STATE OF MAINE                                          SUPERIOR COURT
YORK, ss.                                               CIVIL ACTION
                                                        Docket No. CV-03-267

AMY B. MCGARRY, et al.,

        Plaintiffs,

    v.                                                  ORDER

ROBERT M.A. NADEAU, et al.,

        Defendants.

        Before the court is the issue of whether the plaintiffs are entitled to supplemental

relief to enforce the declaratory judgment entered by the court on November 1, 2005 in

the above-captioned case. This issue was previously addressed in the course of a prior

order filed January 24, 2006, and a hearing was held on this issue on February 6, 2006.[1]

        At the February 6 hearing plaintiffs were given until February 21, 2006 to make a

further submission with respect to the status of various district court cases. However,

no submission was filed by February 21, 2006. On March 13, 2006, almost three weeks

later, plaintiffs filed a supplemental memorandum along with a motion for leave to

accept late filing. Defendants oppose the late filing.

        The court will deny plaintiffs' motion for late filing and will disregard their

supplemental memorandum. The court does not doubt that plaintiffs' counsel

experienced significant computer problems around the filing deadline which would

have justified some extension. However, it cannot justify plaintiffs' three-week silence.

Where the court was expecting a filing, some method could and should have been

found during the week of February 21 to communicate with the court in order to

explain the problem and ask for an extension.

---

[1] The hearing was held at Cumberland County Courthouse.

The court will therefore rule on the pending issue based on the February 6 hearing, the parties' submissions up to that time, and defendants' February 9 post-hearing letter.

At the February 6, 2006 hearing the parties made oral presentations and the defendants submitted certain documents, which were marked as Defendants' Exhibits 1, 1A, 1B, 1C, and 1D and admitted in evidence at the hearing. Both parties waived the right to offer further evidence.

Based on defendants' October 31, 2005 communications to several former clients, defendants' November 8, 2005 and February 3, 2006 letters to the Biddeford, York, and Springvale District Courts, the timing of those letters, the presentations of the parties, and the prior evidence admitted at trial, the court concludes as set forth on the record on February 6, 2006 that defendants have interfered with plaintiffs' ability to collect certain client accounts. According to the court's October 28, 2005 oral findings and the court's declaratory judgment dated October 31, 2005 and filed November 1, 2005, those client accounts were owed to plaintiffs. The potential amount affected as shown on defendants' Exhibit 1D is $16,288.95.

The October 31, 2005 communications to former clients, which are contained in defendants' Exhibit 1D, are misleading in that they state that the client balances in question had been "written off by our firm" at a time when the court had just ruled that clients did not have any balance due to defendants' firm. That balances originally owed to Nadeau & McGarry were now being "written off" by Nadeau & Associates was likely to mislead the former clients into believing their debt had been entirely discharged. As of the dates defendants sent the October 31 and November 8 letters, Nadeau & Associates had no right to the balances in question and was not entitled to communicate

2

with either the former clients or the district court in a manner that purported to dispose of those rights.

Indeed, plaintiffs argued at the February 6 hearing that the defendants' November 8 letters to various district court clerks may not only have interfered with plaintiffs' right to collect the client accounts in question but may have terminated any right to collect those accounts. The letters in question advised the court that the judgments in question had been "satisfied." Although this was incorrect and unauthorized, the legal effect of those letters is unclear. Specifically, it is not clear whether – given the unauthorized and illegitimate nature of those letters – they should have the legal effect of irrevocably discharging the underlying obligations. In this connection, defendants have belatedly sent subsequent letters to the court clerks in question stating that their November 8, 2005 letters should be disregarded.[2] Moreover, according to defendants' February 9 letter, none of the district courts have taken action based on the defendants' November 8 letter and the cases in question remain pending.

At this point, whether the plaintiffs can seek to collect from the clients in question is unknown and whether those clients might seek to raise the November 8 letters as a defense to any collection efforts and whether they would be successful if they did so is also unknown. Ultimately, the effect of defendants' November 8 letters is a matter that may have to be resolved by the courts in which those cases are pending. If plaintiffs decide to pursue these accounts, it is highly likely that resolution of this issue will require plaintiffs to expend effort and expense that would have been unnecessary but for defendants' actions. It is also possible that defendants' actions have made

---

[2] These subsequent letters were not sent until three days prior to the February 6 hearing, after defendants had been made aware by the court's January 24 order that their post-judgment conduct was going to be the subject of that hearing.

collection from some or all of these clients prohibitively expensive or impossible, and it may be that under the circumstances plaintiffs will choose not to pursue these accounts.

At a minimum, therefore, the November 8 letters to the district court clerks represented further action by defendants, after their October 31 letters purporting to write off the balances in question, to frustrate and impede plaintiffs' ability to collect client accounts that were awarded to them in the November 1, 2005 declaratory judgment. Following the February 6 hearing and based on defendants' October 31 and November 8 letters, the court concluded that injunctive relief was warranted pursuant to 14 M.R.S.A. § 5960, and it issued an order dated February 14, 2006 prohibiting defendants from interfering directly or indirectly with plaintiffs' ability or efforts to collect any amounts due to them under the November 1, 2005 declaratory judgment.[3]

Given the bitterness of this litigation, the resentment displayed by defendants toward plaintiffs, the timing and wording of the October 31 and November 8 communications, and the fact that copies of those communications were not sent to counsel for plaintiffs, the court cannot accept defendants' contentions that their actions were inadvertent and concludes that defendants' conduct was in fact intended to impede or frustrate plaintiffs' ability to collect amounts which, under the court's judgment, were owed to plaintiffs by the clients listed in Exhibit 1D.

The remaining question is what additional relief, if any, may be awarded to the plaintiffs. As it expressed at the February 6, 2006 hearing, the court does not believe that it can award monetary relief, impose a monetary sanction, or award attorneys fees in the absence of a finding of contempt, even though it has concluded that defendants took action to subvert the court's declaratory judgment.

---

[3] According to the docket sheet, this order was dated February 14, 2006 and was filed February 16, 2006 but was not docketed until February 22, 2006.

4

Although M.R.Civ.P. 66 provides that contempt includes "failing to comply with a lawful judgment," it is doubtful that this language would allow a finding of contempt for conduct that involves undermining the effect of a judgment rather than directly failing to comply. See M.R.Civ.P. 66(d)(2)(D)(i) (finding of contempt requires that refusal to perform an act required by court order or performance of an act prohibited by court order). Moreover, there is authority suggesting that contempt is not available to enforce a declaratory judgment. See Steffel v Thompson, 415 U.S. 452, 471 (1974), quoting Perez v. Ledesma, 401 U.S. 82, 125 (Brennan, J., concurring).

Although it is troubled, to say the least, by defendants' conduct, the court concludes that under the circumstances, relief under 14 M.R.S.A. § 5960 is limited to injunctive relief enforcing the original declaratory judgment. In the event of any further subversion or interference by defendants, contempt will be available.[4] This order is without prejudice to plaintiffs' right, if they should so choose, to seek relief for any losses caused by defendants' October 31 and November 8 letters in a new lawsuit alleging conversion, interference with advantageous relationship, or any similar theory. The court expresses no view as to the ultimate merits of any such action.

In conclusion, the court hereby orders as follows

1.      Defendants shall continue to be prohibited from interfering directly or indirectly with plaintiffs' ability or efforts to collect any amounts due from plaintiffs' clients or from any individuals whose obligations or debts were determined to be owed to plaintiffs' in the court's order dated October 31, 2005 and filed November 1, 2005.

2.      Although the status of the district court judgments is in dispute, defendants shall – if requested by plaintiffs – execute assignments of any judgments

---

[4] The court understands that with respect to these client accounts this may be the equivalent of locking the barn door after the horse has been stolen but does not believe for the reasons stated that there exists authority to award monetary relief.

against Joseph Brown, Diane Houde, Kathleen Lashua, Robert LeClerc, Charles Moors, Christian Proulx, and Cindy Stacy to the plaintiffs in any form requested by counsel for plaintiffs.

3. Defendants shall – if requested by plaintiffs – prepare and send notices to Joseph Brown, Diane Houde, Kathleen Lashua, Robert Leclerc, Charles Moors, Christian Proulx, and Cindy Stacy on the letterhead of Nadeau and Associates stating (1) that the time Nadeau & Associates sent an October 31, 2005 notice to them stating that their remaining balance had been written off by Nadeau & Associates, the Superior Court had ruled that Nadeau & Associates did not have any right to collect those balances and that the balances were instead owed to the firm of McGarry & Holmes LLC; (2) Nadeau and Associates has released its claim to their outstanding balance but did not have authority to release any obligation they had to McGarry & Holmes, and (3) their balance remains owed to McGarry & Holmes and all inquiries should be directed to McGarry & Holmes.[5]

4. Except to the extent specifically permitted under paragraph 3, defendants shall continue to be prohibited from communicating with any of the individuals to whom notices were sent after October 28, 2005 stating that their balances had been written off.

The entry shall be:

Plaintiffs' March 13, 2006 motion to accept late filing of supplemental memorandum is denied. Injunctive relief is ordered pursuant to 14 M.R.S.A § 5960 as set forth in numbered paragraphs 1 through 4 above. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

---

[5] At the February 6, 2006 hearing plaintiffs indicated that they were not inclined to request that such notices be sent. If they change their mind, they shall have 10 days from the date this order is filed to notify defendants of that fact. Copies of any notices sent by defendants pursuant to this paragraph shall be sent to counsel for plaintiffs.

CV-03-267

Dated: March _?-'!_ , 2006

_____
Thomas D. Warren
Justice, Superior Court

JACK HUNT, ESQ. - PLS
Robert M. A. Nadeau, Esq. - DEFS

7