[Civ. No. 6448. Second Appellate District, Division Two.—March 31, 1931.]

PHILIP COHEN, Respondent, v. JACOB BERMAN et al., Appellants.

Dudley Robinson for Appellants.

Ben C. Cohen for Respondent.

ARCHBALD, J., *pro tem.*—Plaintiff, an attorney at law, sued defendants for the reasonable value of legal services alleged to have been rendered them. The defendants answered denying that they were indebted to plaintiff in the amount claimed or in any other sum, and defendant Jacob Berman, also known as Jack Bennett, filed an amended answer which, in addition to said denial, set up the further defense of the statute of frauds. Plaintiff recovered judgment and defendants appeal.

On the part of appellant Louis Berman it is contended that the contract for respondent's employment was made with a firm of attorneys in New York and that it covered the entire service rendered by respondent; that such contract was never terminated and that respondent had no right to charge Louis Berman as the party primarily liable thereon, and that the latter's assent to the continued employment of respondent did not constitute a novation. Appellant Jacob Berman contends that he did not make or join in the original contract of employing respondent, and that any subsequent promise made by him is within the statute of frauds and void. The court found that respond-

ent was employed by Louis Berman and that the promise of Jacob Berman "was an original promise and constituted a direct obligation and promise of the said defendant to the plaintiff in conjunction with the promise of defendant Louis Berman to pay for the services rendered and to be rendered for the defendant Louis Berman by said plaintiff".

The first intimation which plaintiff received of possible employment was a wire dated May 17, 1927, signed by Mark Eisner of the New York law firm of Olvany, Eisner and Donnelly, which advised plaintiff that he would "be visited by Louis Berman brother of Jack Bennett", and contained the following instructions: "Take care of him I represent Jack Bennett Please advise regarding developments." Shortly thereafter Louis Berman called on plaintiff, but before that plaintiff had not met either defendant.

In a conversation with Mr. Donnelly of the New York firm, according to plaintiff's testimony, the latter said to Donnelly, in regard to fees, that $10,000 should be paid as a retaining fee for all services up to the time of trial; that the $10,000 should be divided up in this way: That $5,000 should be fixed immediately as a retaining fee and $5,000 held for expenses as they were incurred, the balance, if any, to be applied on general fees; "and that if the case goes to trial, that an arrangement should be made for further compensation. He said he felt that was reasonable". Thereafter plaintiff received a letter from the New York firm, written by Donnelly, in which he states: "Today, when I conferred with Mrs. Berman, she delivered to me a check to your order for $10,000, of which you are to take $5,000 as fees, and $5,000 to apply as disbursements in the matter concerning which you and I spoke while we were there. So much as is not used by you for disbursements may be applied toward your general fees." At that time Louis Berman was evidently in Los Angeles and Jacob Berman in New York; and it is apparent from the letter that the first employment included not only the representation of Louis Berman but services to be performed for Jacob Berman as well. It also appears from the evidence that the check for $10,000 received by plaintiff was the "check of Mildred Berman, Mr. Jacob Berman's wife".

The plaintiff also testified that about January 3d or 4th "Mr. Louis Berman called me upon the phone and stated

134

to me as follows: 'You know our case comes up for trial', I believe he said, 'tomorrow'. I said, 'Yes, I know all about it.' He said, 'You are going to be there to represent me.' I said, 'If you desire to have me represent you I will certainly be there, but some arrangement must be made for my compensation per day during the trial.' He said, 'I know that, and you will be paid for your services.' " The question of fees for the trial was again brought up by plaintiff at a luncheon arranged for that purpose and attended by both defendants. Concerning that, the plaintiff testified: "While we were lunching there I said to both of these defendants—they were both sitting opposite me: 'Now you know, Louis, I have been paid a certain amount of money, which went as general fees under a retainer'; that that had reference to my services in this matter which had taken place from March 20th until the time of the trial; 'here with you in my office pretty near every day from March until September, seeking confidential advice, getting advice, and almost turning my office over to you and your brother in this particular case; going down to New York and communicated certain arrangements that were made in the case for your brother . . . ; that that ten thousand dollars has long since been used up . . . We have met here today, and I want to have some definite understanding as to my fees.' He said, 'Well, what are they?' Jack Bennett said, 'What are they?' Mr. Louis Berman did very little talking. In fact, I don't think he did any. I said, 'I will tell you, Jack, in this case here it is a case of quite some importance. I had assurance from the district attorney that the indictment against Louis here will be dismissed as soon as the jury is polled. . . . I can't consider that as a certainty. . . . I must be in court from ten o'clock in the morning until court adjourns in the evening. I will have very little time for work in my office. . . . And I think under the circumstances $200 is a very reasonable charge per day for my services.' . . . Jacob Berman turned around and said to me, 'If you say that $200 is a reasonable fee it will be so paid.' So I said, 'All I want is what is reasonable.' . . . I then turned around, and he said, 'All right . . . you will be paid a reasonable fee. Let the matter stand a few days.' I said, 'that is all right with me'. He said, 'All right; whatever is reasonable you will be paid.' I said, 'Then you

want me to wait until that motion [the motion to dismiss]?' He said, 'Yes.' I said, 'Is that all right with you, Louis?' He said, 'Yes.' I said, 'Then it is all right with me.' So I proceeded and continued to proceed in that trial.'' After that an arrangement was made, according to the testimony of plaintiff, that Jacob Berman's attorney would represent his brother Louis, and in the consent to plaintiff's withdrawal from the case, which was dated February 6, 1928, and signed by both defendants, appears the following: ''In addition to the sum of money heretofore paid you as retaining fee, we agree that between now and March 1, 1928, to pay you such reasonable sum as both yourself and we may agree upon for all of your services to this date.''

We have quoted quite at length from the testimony to show that there is evidence to support the findings of the trial court. The money paid respondent for his time and expenses up to the trial came from Jacob Berman's wife. Respondent commenced the trial not only by reason of the original agreement but also because of the express request of the defendant Louis Berman, and both defendants repeatedly promised to pay a reasonable fee per day for the time he was engaged therein. No question is raised as to the reasonableness of the fee allowed by the court. We find no error in the judgment rendered.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.