Rel: May 23, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

————————————————

## CL-2024-0767

————————————————

## G.D. and S.D.

## v.

## S.R.S. and R.H.S.

## Appeal from Tallapoosa Juvenile Court
## (JU-16-132.02)

————————————————

## CL-2024-0768

————————————————

## G.D. and S.D.

## v.

## S.R.S. and R.H.S.

**Appeal from Tallapoosa Juvenile Court**
**(JU-16-132.03)**

HANSON, Judge.

G.D. ("the biological father") and S.D. ("the biological mother") (collectively referred to as "the biological parents") appeal from judgments of the Tallapoosa Juvenile Court ("the juvenile court") denying the biological parents' requests, pursuant to Rule 60(b)(4), Ala. R. Civ. P., to have a termination-of-parental-rights judgment issued against them declared void.

Background

G.A.D. ("the child") was born to the biological parents in February 2016. The juvenile court granted S.R.S. and R.H.S. ("the maternal grandparents") custody of the child in June 2016. On June 8, 2018, the maternal grandparents filed a petition to terminate the biological parents' parental rights. In their petition, the maternal grandparents alleged that the biological mother had abused drugs, that the biological mother had only visited the child twice, that the biological father had never visited the child, that the biological parents had abandoned the child, that the biological parents were unwilling or unable to care for the

2

child, that  the biological parents had provided no support for the child, and that the biological parents had made no effort to adjust their circumstances to meet the needs of the child.

On July 2, 2018, the biological parents responded, stating that they had been unsuccessful in attempting to receive information from their former attorney and that they would be representing themselves because they had been unable to hire another attorney.  The biological parents argued that their circumstances had improved and that they would welcome a home study to obtain custody of the child.  They also argued that a child-support calculation, which was allegedly made after a hearing on February 13, 2017, was incorrect because it only included one of the biological parents' incomes. The biological mother stated that the parties had a small farm. In support of their answer, the biological parents attached a copy of a one-year lease agreement dated February 2018 for a residence in Florida.  They also attached an Internal Revenue Service Form W-2  ("W-2") from RTG Furniture Corporation, a corporation with a Florida address, from which it appears that the biological mother had earned at least $7,622 in 2017 and from which the biological father had earned, as best as we can discern from the attached

W-2, over $68,000 from RTG Furniture Corporation in 2017. They also attached receipts evidencing the purchase of farm animals.

On August 6, 2018, the juvenile court appointed a guardian ad litem for the child and appointed counsel for the biological parents. Counsel for the biological parents filed an answer to the termination-of-parental-rights petition. A final hearing was held on January 15, 2019. The biological parents were represented by counsel at the final hearing. The maternal grandmother testified that the biological mother had lost custody of her two older children pursuant to a judgment from a Georgia court in 2018, and that those older children were residing with their biological father.

The biological mother was asked whether "hard feelings" regarding the conditions that the maternal grandmother had placed on her visits with the child had resulted in the biological mother having visited the child only twice. The biological mother responded that financial concerns had limited her visits because she and the biological father had been spending thousands of dollars visiting the biological father's children born to another woman in Virginia. The biological father testified that he was currently employed with a construction company.

4

On January 16, 2019, the juvenile court entered an order terminating the biological parents' parental rights, concluding that they had abandoned the child, that they had been unwilling or unable to discharge their responsibilities for the child, that the biological parents had not provided support or maintained consistent contact with the child; that the biological parents had not adjusted their circumstances to meet the needs of the child; and that it was in child's best interest to terminate the biological parents' parental rights. Counsel for the biological parents filed notices of appeal on January 28, 2019. The appeals were assigned case nos. 2180387 and 2130388 with our court, respectively. On February 1, 2019, counsel for the biological parents filed a motion to withdraw, stating that he did not represent the parties in appellate matters. On February 4, 2019, the juvenile court granted counsel's motion to withdraw.

According to the internal docket sheets in case nos. 2180387 and 2180388, our clerk's office contacted the juvenile court to see if the juvenile court had appointed appellate counsel for the biological parents.[1]

---

[1]A court may take judicial notice of its own records. See City of Mobile v. Matthews, 220 So. 3d 1061, 1064 (Ala. Civ. App. 2016).

5

The juvenile court clerk's office responded that the biological parents had not asked for new appointed counsel after the juvenile court had granted the motion to withdraw filed by the biological parents' trial counsel. On April 16, 2019, this court requested letter briefs from the parties as to whether their appeals were from a final judgment because the juvenile court had not awarded permanent custody to the maternal grandparents in its January 16, 2019, order. On May 21, 2019, this court dismissed the appeals because the orders were not final. Certificates of judgment were entered on June 10, 2019.

On January 6, 2020, the maternal grandparents filed a motion to amend the orders to "reflect the language requested by the Court of Civil Appeals." On January 7, 2020, the juvenile court amended its order to award permanent legal custody to the maternal grandparents, thereby entering a final judgment. No notices of appeal were filed as to that final judgment.

On June 13, 2024, a limited notice of appearance was filed on behalf of the biological parents. On August 15, 2024, the biological parents filed a Rule 60(b)(4) motion in the action that resulted in the judgment terminating their parental rights (case no. JU-16-132.02), arguing that

the juvenile court's judgment entered on January 7, 2020, was void because the biological parents were without legal representation on appeal.[2] On September 10, 2024, the biological parents filed an independent action pursuant to Rule 60(b)(4), asserting the same grounds as the Rule 60(b)(4) motion filed on August 15, 2024 (JU-16-132.03). On September 19, 2024, the juvenile court denied the biological parents any relief under Rule 60(b) in both actions. The biological

---

[2]The biological parents asserted in their motion that an affidavit of substantial hardship had been filed. Although the record on appeal does not contain such an affidavit, the record in case nos. 2180387 and 2180388 contains an affidavit of substantial hardship filed by the mother in 2016. While we recognize that in J.S. v. J.C., 181 So. 3d 1067 (Ala. Civ. App. 2015), this court held that the juvenile court in that case should have reviewed the father's financial status to determine whether he was entitled to appointed counsel when the father's counsel filed a motion to withdraw after filing an answer; in his motion to withdraw, the father's counsel had indicated that the father was incarcerated and indigent, that the father could not pay for counsel, and that the father was requesting appointment of counsel for the upcoming trial. J.S. is distinguishable from the present case. Here, the biological parents had an attorney and were later unable to communicate with their counsel. The juvenile court appointed counsel for the biological parents, and they were represented by appointed counsel at trial. The juvenile court then entered an order terminating their parental rights. The biological parents' counsel filed a notice of appeal on their behalf before being allowed to withdraw. Unlike J.S., in which the father was incarcerated and his counsel indicated that the father lacked resources to obtain counsel, here, the biological parents' own filings and testimony indicated that their finances and ability to afford counsel varied.

parents filed notices of appeal on September 30, 2024.

In their brief to this court, the maternal grandparents asserted that they had adopted the child in 2020 following the termination of the biological parents' parental rights. Because the adoption could make the appeals moot, see South Alabama Gas District v. Knight, 138 So. 3d 971, 976 (Ala. 2013) (holding that mootness is a jurisdictional issue and appellate courts may receive facts relevant to that issue), this court's clerk's office entered the following orders in these appeals:

> "The court is advised that the child at issue in the proceedings below was adopted by [the maternal grandparents] in 2020; however, [the biological parents] do not concede that fact. Because the adoption may moot this appeal, we hereby order the parties to present any admissible evidence proving or disproving the adoption within 14 days of entry of this order. The parties may file a letter brief along with the evidence to explain their position regarding the evidence and the effect of the evidence on this appeal. The opposing party may file a responsive letter brief 7 days thereafter."

On March 26, 2025, the maternal grandparents filed a letter brief with this court, attaching a petition for adoption filed in the Tallapoosa Probate Court on March 29, 2020. They also attached a final judgment of adoption dated June 18, 2020, and a document captioned as "Alabama Report of Adoption." In the body of their letter brief, the maternal

grandparents argue that the subsequent adoption of the child moots the biological parents' appeals. On April 2, 2025, the biological parents filed a letter brief, asserting that the adoption petition had incorrectly stated that their parental rights were terminated on January 16, 2019, and that although the adoption petition refers to case no. 2020-A-007, the order granting the adoption refers to case no. 2020-A-008.[3] The biological parents argue that their due-process rights were violated because, they say, their parental rights were terminated while they were without counsel. The biological parents further argue that their right to raise a due-process challenge in the termination-of-parental-rights proceeding constituted a defense to the adoption petition filed by the maternal grandparents.

Discussion

"[W]hether an appeal no longer presents a justiciable controversy on the ground of mootness is a question of subject-matter jurisdiction that may be raised <u>ex mero motu</u>." <u>Pooh Bear Academy v. Alabama Dep't of</u>

---

[3]Both the adoption petition and the final judgment of adoption referred to the child by name and the child's birthdate as reflected in the child's original birth certificate, which also was attached to the maternal grandparents' letter brief.

Hum. Res., 399 So. 3d 1041, 1054 (Ala. Civ. App. 2023). In Davis v.

Davis, 221 So. 3d 474, 480-81 (Ala. Civ. App. 2016), this court stated:

> "'"'The test for mootness is commonly stated as whether the court's action on the merits would affect the rights of the parties.' Crawford v. State, 153 S.W.3d 497, 501 (Tex. App. 2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1993)). 'A case becomes moot if at any stage there ceases to be an actual controversy between the parties.' Id. (emphasis added) (citing National Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999))."
>
> "'Chapman v. Gooden, 974 So. 2d 972, 983 (Ala. 2007) (first emphasis added). See also Steffel v. Thompson, 415 U.S. 452, 459 n.10, 94 S. Ct. 1209, 39 L.Ed. 2d 505 (1974) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").'
>
> "South Alabama Gas Dist. v. Knight, 138 So. 3d 971, 974-75 (Ala. 2013).
>
> "'"[A]n appeal will be dismissed as moot 'if an event happening after hearing and decree in circuit court, but before appeal is taken, or pending appeal, makes determination of the appeal unnecessary or renders it clearly impossible for the appellate court to grant effectual relief.'" Masonry Arts, [Inc. v. Mobile Cty. Comm'n,] 628 So. 2d [334,] 335 [(Ala. 1993)], quoting Morrison v. Mullins, 275 Ala. 258, 259, 154 So. 2d 16, 18 (1963).'

"Estate of Mollett v. M & B Builders, L.L.C., 749 So. 2d 466, 469 (Ala. Civ. App. 1999).

    "'"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'

"King v. Campbell, 988 So. 2d 969, 976 (Ala. 2007) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132,40 L.Ed. 293 (1895))."

In Alabama, juvenile courts have original, exclusive jurisdiction over proceedings to terminate parental rights. § 12-15-114(c)(2), Ala. Code 1975. Former § 26-10A-3, Ala. Code 1975, vested the probate court with original jurisdiction of proceedings brought under the Alabama Adoption Code.[4] The Alabama Adoption Code "specifically empower[ed]

---

[4]This case is governed by the former Alabama Adoption Code, § 26-10A-1 et seq., Ala. Code 1975. Although the Alabama legislature repealed the Alabama Adoption Code and replaced it with the Alabama Minor Adoption Code, § 26-10E-1 et seq., Ala. Code 1975, see Ala. Acts 2023, Act No. 2023-92, the repeal was not effective until January 1, 2024, when the Alabama Minor Adoption Code became effective, and the new adoption code applies only to adoption proceedings involving minors commenced on or after that date, see C.S. v. Morgan Cnty. Dep't of Hum. Res., [Ms. CL-2022-1246, Jan. 31, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). The maternal grandparents commenced the adoption proceedings on March 29, 2020.

11

juvenile courts to terminate parental rights in order to facilitate the adoption of a child." S.N.W. v. M.D.F.H., 127 So. 3d 1225, 1229 (Ala. Civ. App. 2013) (citing former § 26-10A-3, Ala. Code 1975). Former § 26-10A-17(a)(1) provided that notice of an adoption proceeding was to be given to any person whose consent or relinquishment was required, "unless parental rights [had] been terminated pursuant to [Ala. Code 1975, §] 12-15-319." Additionally, former § 26-10A-25(d) provided that "[a] final decree of adoption may not be collaterally attacked, except in cases of fraud or where the adoptee has been kidnapped, after the expiration of one year from the entry of the final decree and after all appeals, if any." Nothing indicates that fraud or kidnapping were involved in the maternal grandparents' adoption of the child.[5] Therefore, the biological

_____

[5]In this case, the child has been in care of the maternal grandparents since the child was six months old, and the child is now nine years old. The biological parents have abdicated their parental duties. The maternal grandparents are the only parents the child has known, and the child deserves the care, stability, and permanency that the maternal grandparents have provided. Because their parental rights had been terminated, the biological parents did not have a cognizable claim to assert in the adoption proceeding brought by the maternal grandparents. We find In re Baby A, 363 P.3d 193 (Colo. 2015), to be instructive. In Baby A, the best interests of twin children (who had been placed for adoption with adoptive parents without their biological father's knowledge because of the biological mother's fraudulent representations

12

after the children's birth that she did not know the father's full identity) were served by terminating the father's parental rights and awarding custody of the twins to the adoptive parents even though the father had not been found to be an unfit parent; the adoptive parents brought the twins home from the hospital after birth and had been caring for them for their entire lives. The opinion in Baby A indicates that removal of the twins from the adoptive parents would have caused them significant psychological harm because the adoptive parents were, for all practical purposes, both their psychological and actual parents; the twins were securely attached to the adoptive parents, and the twins never had a meaningful relationship with the father. The Colorado Supreme Court held that the trial court had sufficiently protected the father's fundamental liberty interest in his children when it applied a presumption in favor of preserving parental rights and then made findings required by Colorado statutes, sufficient to overcome the presumption, that were supported by clear and convincing evidence. 363 P.3d at 201-02.

The Colorado Supreme Court stated:

"We conclude that [the Colorado] statutory scheme adequately protects [the father's] due process rights. Specifically, section 19-5-105 protects [the father's] due process rights by ensuring that the state does not infringe parental rights 'simply because a state judge believes a "better" decision could be made.' Troxel [v. Granville], 530 U.S. [57,] 73, 120 S.Ct. 2054 [(2000)]. It constrains judges' discretion and mandates that the party seeking termination prove certain factors before the court may terminate parental rights. Significantly, the court must find all of those factors by clear and convincing evidence. Hence, this statutory scheme is consistent with the U.S. Supreme Court's due process requirements as laid out in Santosky [v. Kramer], 455 U.S. [745,] 769 [(1982)], and Troxel, 530 U.S. at 67-69, 120 S.Ct. 2054."

13

363 P.3d at 203-04. The Colorado Supreme Court went on to conclude that the trial court had not abused its discretion in finding that the father had failed to promptly take substantial parental responsibility for the children, and that terminating the father's parental rights and awarding custody of the twins to the adoptive parents was in the children's best interest.

"We conclude that clear and convincing evidence supported the trial court's finding that terminating [the father's] parental rights was in the [the children's] best interest. The twins are securely attached to their adoptive parents -- the only parents they have known. They have never had a meaningful relationship with [the father]. Most importantly, the court found that a change in custody would cause the twins significant psychological harm. Thus, these findings, to which this court must give 'paramount consideration,' support the conclusion that terminating the parent-child relationship between [the father] and the twins is in the twins' best interests. § 19-5-105(3.2).

"In conjunction with terminating [the father's] parental rights, the trial court examined whether remaining in the adoptive parents' custody was in the twins' best interests. In so doing, the court again applied the presumption that biological parents have a first and prior right to custody. See [In re ]C.C.R.S., 892 P.2d [246,] 256 [(Colo. 1995)]. It also recognized, again, that this presumption may be rebutted if evidence shows that the child's best interests are better served by granting custody to the third party. Id. After applying the presumption in favor of [the father], the trial court ultimately determined that the children's best interests require that the twins remain in the custody of the adoptive parents. Specifically, it found that, '[d]espite the extremely unfortunate manner in which the circumstances of this case arose (in which neither [the adoptive parents] or [the father] are responsible), and despite the fact that [the father] is not

14

parents' appeals are moot. See also In re Amari F., 217 A.D.3d 1063, 190 N.Y.S.3d 194 (2023) (holding that child's adoption mooted mother's appeal of family court's disposition in which that court had adjudicated the child to be permanently neglected and had terminated mother's parental rights); In re India B., 202 Ill. 2d 522, 782 N.E.2d 224, 270 Ill. Dec. 30 (2002) (rejecting the mother's argument on appeal that the trial court had violated her rights to due process and to counsel by terminating her parental rights when mother's appeal was moot because it had been three years since the children had been adopted and seven years that the children had been residing with the adoptive parents; the mother had failed to obtain a stay of the order terminating her parental rights and mother's timely notice of appeal did not stay enforcement of termination orders and adoption orders predicated upon termination orders became unchallengeable after passage of one year); In re Albert G., 5 Cal. Rptr. 3d 914, 297 P. 968 (Cal. Ct. App. 2003) (holding that maternal aunt's

---

unfit, and despite the fact that he has a strong desire to have custody of these children,' the 'presumption in favor of [the father]' was overcome and rebutted by clear and convincing evidence."

In re Baby A, 363 P.3d at 208-09.

appeal from dependency proceeding was moot when child, who had previously been in the maternal aunt's care, had already been adopted by the paternal grandparents).

In conclusion, as to these appeals, the child's adoption has rendered moot any legal issues presented as to the denial of the biological parents' Rule 60(b)(4) motion in the termination-of-parental-rights action as well as the independent Rule 60(b)(4) action. Accordingly, these appeals are dismissed.

CL-2024-0767 -- APPEAL DISMISSED.

CL-2024-0768 -- APPEAL DISMISSED.

Moore, P.J., concurs.

Edwards, J., concurs in the result, without opinion.